# EXHIBIT "1"

# PART 1 OF 2

McCORRISTON MILLER MUKAI MacKINNON LLP

DAVID J. MINKIN                3639-0
LISA W. CATALDO               6159-0
Five Waterfront Plaza, 4th Floor
500 Ala Moana Boulevard
Honolulu, Hawaii 96813
Telephone: (808) 529-7300

Attorneys for Plaintiffs Trustees
of the Hawaii Carpenters Trust Funds

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 1 0 2002

at  3  o'clock and  70  min.  M.
WALTER A. Y. H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| **HAWAII CARPENTERS TRUST FUNDS,** <br>(*Health & Welfare Fund* by its trustees <br>Albert Hamamoto, Audrey Hidano, Henry <br>Iida, Glen Kaneshige, Thomas Toma, <br>Daniel Tom, Elmer Cabico, Paul C.K. <br>Chang, Ronald Taketa, Melvin Fujii, <br>Clifford Resacio, Russsell Young and <br>Keith Hirota; *Apprenticeship & Training <br>Fund* by its trustees James Ramirez, <br>Russell Ogata, Conrad Murashige, <br>Robert Donle, Angela Chinen, Dante <br>Agra, Ron Taketa, Sidney Shimokawa, <br>Dean Takahashi and Russell Hiranaka; <br>*Vacation & Holiday Fund* by its trustees <br>James Watanabe, James Ramirez, <br>Gerard Sakamoto, Paul Sasaki, Jiggs <br>Tamashiro, Mark Erwin, Michael Spain, <br>Jr., Rockwell Rogers, Jr., Curtis Kern, <br>Patrick Borge, Sr. and Lloyd Kupau, Jr.; <br>*Market Recovery Program* by its trustees <br>Edmund Aczon, Thalia Choy, Steven <br>Hidano, Claude Matsumoto, Gerard <br>Sakamoto, Albert Belliveau, Michael <br>Spain, Jr., Ronald Taketa, Glenn Young <br>and Jason Orita; *Financial Security Fund* <br>by its trustees Kenneth Sakurai, Gordon <br>L. Scruton, James Watanabe, Conrad | CIVIL NO. CV 02 00425 DAE BMK <br><br>COMPLAINT; EXHIBITS "A" - "B"; <br>SUMMONS |

19348_1.WPD

EXHIBIT "__1__"

Murashige, Lance Wilhelm, Brian Hedge, )
Rockwell Rogers, Jr., Bruce Soileau,　)
Ronald Taketa, Tim McCormack,　　)
Kenneth Spence, Jack Reeves and　)
Ralph Yackley),　　　　　　　　)
　　　　　　　　　　　　　　)
　　　　　　　　Plaintiffs,　　)
　　　　　　　　　　　　　　)
　　vs.　　　　　　　　　　)
　　　　　　　　　　　　　　)
**DYNAMIC INTERIORS, INC.**, a Hawaii　)
corporation,　　　　　　　　　)
　　　　　　　　　　　　　　)
　　　　　　　　Defendant.　　)
_____ )

## COMPLAINT

Plaintiffs above named, by and through their counsel, McCorriston Miller Mukai MacKinnon LLP, and for a cause of action against Defendant DYNAMIC INTERIORS, INC., a Hawaii corporation, allege and aver as follows:

1.　　Plaintiffs identified above are the trustees of the Hawaii Carpenters Trust Funds, which include the Health & Welfare Trust Fund, Drywall & Carpenters Training Trust Fund, Vacation & Holiday Trust Fund, Market Recovery Program Fund and Financial Security Trust Fund (hereinafter referred to collectively as the "Trust Funds" or "Plaintiffs").

2.　　This action arises under the Labor-Management Relations Act, 1947, as amended, the Employee Retirement Income Security Act of 1974, and the Multiemployer Pension Plan Amendments Act of 1980, as hereinafter more fully appears.  Jurisdiction is founded on questions arising thereunder and more specifically under 29 U.S.C. §§ 185(a), 1145, and 1132(a) and (f).

3.    At all times material herein, each of the above-named Trust Funds was, and now is, an employee benefit plan organized and existing under the laws of the United States and whose principal offices are in the City and County of Honolulu, State of Hawaii.  At all times herein mentioned, each of the above-named Trust Funds was, and now is, an express trust created by a written trust agreement subject to and pursuant to Section 302 of the Labor-Management Relations Act (29 U.S.C. §§ 186) and a multi-employer employee benefit plan within the meaning of the Employee Retirement Income Security Act (29 U.S.C. § 1002).

4.    The Trust Funds are informed and believe, and thereon allege, that at all times relevant herein Defendant DYNAMIC INTERIORS, INC. was and is a Hawaii corporation doing business in the State of Hawaii.

5.    On or about November 20, 1997, Defendant made, executed and delivered to the United Brotherhood of Carpenters & Joiners of America, Local 745, AFL-CIO (hereinafter referred to as the "Carpenters Union"), that certain written collective bargaining agreement, effective September 1, 1997, entitled "Certification of Receipt and Acceptance of the Master Agreement Covering Drywall & Acoustical Workers and Lathers in the State of Hawaii, and Declaration of Trust Agreements Appurtenant Thereto", a copy of which is attached hereto as Exhibit "A" and made a part hereof by reference, by which Defendant agreed to the terms and conditions of the Master Agreement covering Drywall and Acoustical Workers and Lathers in the State of Hawaii, a copy of which is attached hereto as Exhibit "B" and made a part hereof by reference, and the various Trust Agreements establishing each of Plaintiffs' trusts (Exhibits "A" and "B" hereinafter referred to collectively as the "CBA").

6.    Under terms of the CBA, Defendant promised to contribute and pay to the Trust Funds certain employee benefit contributions arising from work performed by Defendant's covered employees, which amounts should be paid to the Trust Funds on or before the due dates as specified in the CBA.

8.    In accordance with the terms of the CBA, Defendant promised to submit timely reports to the Trust Funds reporting hours worked by Defendant's covered employees, which reports would be submitted to the Trust Funds on or before the due dates as specified in the CBA, to permit audits and to allow inspection of their payroll records so that Plaintiffs are able to ascertain whether all contributions due have been paid.

9.    In accordance with the terms of the CBA, Defendant agreed to be subject to and bound by all terms and conditions of the various trust agreements, and further promised that in the event any monthly contributions were not paid when due, Defendant would pay to each trust fund liquidated damages in the amount of twenty percent (20%) of such delinquent and unpaid contributions due to each respective fund or twenty dollars ($20.00), whichever is greater, for each and every delinquent monthly contribution as provided by the CBA, for each delinquency as and for liquidated damages and not as a penalty.

10.    In accordance with the terms of the CBA and 29 U.S.C. §1132(g)(2), the Trust Funds are entitled to recover liquidated damages in lieu of the liquidated damages described in paragraph 8 above, in a sum equivalent to interest at the rate of twelve percent (12%) per annum on all unpaid contributions, if such amount is greater than the liquidated damages described in paragraph 8 above.

19348_1.WPD                                     4

11.    Under the terms of the CBA and 29 U.S.C. § 1132 (g)(2), the Trust Funds are entitled to interest at the rate prescribed by the collective bargaining agreement of twelve percent (12%) per annum on any unpaid trust fund contributions.

12.    In accordance with the terms of the CBA, Defendant agreed that payment of employee benefit contributions to the various Trust Funds would be based upon the total number of hours worked by each covered employee. Defendant's employed workers covered by the provisions of the CBA, and said workers performed work and labor undertaken by Defendant during the time the CBA was in full force and effect.

13.    Based on Defendant's reports submitted for the period to and including August, 2001 (unaudited), there is now known to be due, owing and unpaid to Plaintiffs from Defendant, contributions in the amount of Ninety Three Thousand Three Hundred Fourteen and 23/100 Dollars ($93,314.23). Since Defendant's reports are unaudited, the Trust Funds are unable to determine the amount due and owing for liquidated damages and/or interest.

14.    Defendant's obligations to the Trust Funds to pay trust fund contributions are continuing obligations and Defendant may accrue and owe additional trust fund contributions and liquidated damages up to the time of trial or proof.

15.    At all times herein mentioned it was, and now is, impracticable and extremely difficult to fix the amount of actual damages suffered by the Trust Funds as a result of the non-payment of said trust fund contributions by Defendant. The amounts agreed upon herein, as hereinbefore alleged, as and for liquidated damages, represented and now represent a reasonable endeavor to ascertain and compensate

the Trust Funds for the damages suffered by the Trust Funds arising from the non-payment of trust fund contributions by Defendant.

16.    In accordance with the terms of the CBA and 29 U.S.C. §1132(g)(2)D, Defendant further promised that if it became necessary for the Trust Funds to take legal action to enforce payment of contributions and/or liquidated damages from Defendant, Defendant would pay all court and collection costs and reasonable attorneys' fees.

17.    Based on the foregoing, the Trust Funds have been damaged in the principal sum of $93,314.23, together with liquidated damages and additional interest until judgment and such further amounts as may be proven at trial or hearing on proof.

18.    Defendant has breached the CBA by failing and refusing to produce certain payroll records for the Trust Funds to audit thereby creating an uncertainty as to exact sums presently due and owing by Defendant.

19.    It has been necessary for the Trust Funds to engage counsel for the purpose of collecting the trust fund contributions and liquidated damages described above and to compel production of payroll records, and the Trust Funds are entitled to reasonable attorneys' fees in connection therewith pursuant to the CBA and 29 U.S.C. §1132(g)(2).

WHEREFORE, the Trust Funds pray for judgment against Defendant Dynamic Interiors, Inc., as follows:

19348_1.WPD

6

(a)     That the Court compel and order Defendant to submit timely reports and payments in accordance with the terms of the collective bargaining agreement.

(b)     That the Court compel and order Defendant to produce certain time sheets and payroll records and permit the Trust Funds to audit their payroll books and records as allowed by the collective bargaining agreement.

(c)     That the Defendant remit to the Trust Funds such amounts as may be determined to be due and owing after the necessary reports have been provided, and/or after the necessary payroll audit has been permitted, plus such other amounts as may be due and owing at the time of trial or hearing on proof.

(d)     That Defendant furnish to each of the five (5) Plaintiffs' trust funds a surety bond or cash-in-escrow in the amount equal to Defendant's last three (3) months of contributions or $5,000.00, whichever is greater.

(e)     That the Trust Funds recover from Defendant DYNAMIC INTERIORS, INC., the sum of $93,314.23 together with liquidated damages and additional interest until judgment.

(f)     That the Trust Funds recover from Defendant DYNAMIC INTERIORS, INC. such additional amounts as may, by proof, be shown to be due and owing at the time of trial or hearing on proof.

(g)     That the Trust Funds recover from Defendant DYNAMIC INTERIORS, INC. their costs of court, disbursements and reasonable attorneys' fees due pursuant to the collective bargaining agreement and 29 U.S.C. § 1132(g)(2).

19348_1.WPD

7

(h)     That the Trust Funds have any further and additional relief as the

Court deems appropriate.

DATED: Honolulu, Hawaii, _____JUL 1 0 2002_____.

DAVID J. MINKIN
LISA W. CATALDO

Attorneys for Plaintiffs
TRUSTEES OF THE HAWAII
CARPENTERS TRUST FUNDS

EXHIBIT "E"
### CERTIFICATION OF RECEIPT AND ACCEPTANCE OF THE MASTER AGREEMENT COVERING DRYWALL & ACOUSTICAL WORKERS AND LATHERS IN THE STATE OF HAWAII, AND DECLARATION OF TRUST AGREEMENTS APPURTENANT THERETO

THE UNDERSIGNED CONTRACTOR hereby acknowledges receipt of the following documents:

1. Master Drywall and Lather Agreement executed on the 1st day of September, 1997, and effective to and including August 31, 2002.

2. Hawaii Drywall and Lather Industry Training Declaration of Trust Agreement executed on the 28th day of December, 1977, as amended;

3. Hawaii Carpenters Health & Welfare Fund Declaration of Trust Agreement executed on the 28th day of December, 1977, as amended;

4. Hawaii Carpenters Vacation & Holiday Fund Declaration of Trust Agreement executed on the 28th day of December, 1977, as amended;

5. Hawaii Carpenters Financial Security Fund Declaration of Trust Agreement as executed December 31, 1987;

6. Hawaii Carpenters Market Recovery Program Declaration of Trust Agreement as executed December 31, 1987;

and hereby certifies acceptance of all terms an conditions as contained in said document, with all terms and conditions to be effective as of _____9/1/97_____.

From and after the date, hereinabove set forth, the undersigned Contractor agrees to abide by all the terms and conditions in said Agreement and any amendments, modifications, changes, extensions, and renewals, thereto. Any such amendments, modifications, changes, extensions, and renewals made to the Agreements hereafter shall become effective and shall remain in full force and effect only upon execution by the Union and the Association of an appropriate written document, a copy of which (or other notice of such changes) shall be mailed to the Contractor's last-known address.

UNITED BROTHERHOOD OF CARPENTERS
& JOINERS OF AMERICA, LOCAL 745, AFL-CIO

_____
Financial Secretary

_____
Senior Field Rep.

DYNAMIC INTERIORS
_____
Contractor

_____
Authorized Signature
11-20-97
_____
Date of Signature

STREET ADDRESS OF ABOVE CONTRACTOR
4137 LIKINI ST.
HON. HI                    96818
_____        Zip Code
422-1635            C-19041
Phone No.            License No.

EXHIBIT " A "



# Master Agreement

*covering*

# Drywall & Acoustical Workers and Lathers

*in the State of Hawaii*

EXHIBIT " B "

# AGREEMENT COVERING DRYWALL & ACOUSTICAL WORKERS AND LATHERS IN THE STATE OF HAWAII

## SCHEDULED WAGE AND BENEFIT INCREASES

| | Present | Eff 9/1/97 | Eff 3/2/98 | Eff 8/31/98 | Eff 3/1/99 | Eff 8/30/99 | Eff 2/28/00 | Eff 9/4/00 | Eff 2/26/01 | Eff 9/3/01 | Eff 3/4/02 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| WAGE RATE JOURNEYMAN | $26.65 | +.25 26.90 | +.25 27.15 | +.25 27.40 | +.25 27.65 | +.35 28.00 | +.35 28.35 | +.50 28.85 | +.50 29.35 | +.80 30.15 | +1.00 31.15 |
| HEALTH AND WELFARE | 3.32 | +.15 3.47 | +.15 3.62 | +.15 3.77 | +.15 3.92 | +.15 4.07 | +.15 4.22 | +.05 4.27 | +.05 4.32 | 4.32 | 4.32 |
| FINANCIAL SECURITY FUND | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | +.25 5.25 | +.25 5.50 | 5.50 | 5.50 |
| VACATION AND HOLIDAY FUND | 4.80 | 4.80 | 4.80 | 4.80 | +.20 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 |
| APPRENTICESHIP AND TRAINING | .30 | .30 | .30 | +.10 .40 | .40 | +.05 .45 | +.05 .50 | .50 | .50 | .50 | +.10 .60 |
| MARKET RECOVERY PROGRAM | .10 | .10 | .10 | +.10 .20 | .20 | +.05 .25 | +.05 .30 | .30 | .30 | .30 | +.10 .40 |
| *TOTAL WAGES AND FRINGES* | 40.17 | +.40 40.57 | +.40 40.97 | +.60 41.57 | +.60 42.17 | +.60 42.77 | +.60 43.37 | +.80 44.17 | +.80 44.97 | +.80 45.77 | +1.20 46.97 |

| TOTAL PER YEAR | .80 | 1.20 | 1.20 | 1.60 | 2.00 |
|---|---|---|---|---|---|

| Hawaii Drywall Industry Improvement Program | $.15 | $.15 | $.15 | $.15 | $.15 | $.15 | $.15 | $.15 | $.15 | $.15 | $.15 |
|---|---|---|---|---|---|---|---|---|---|---|---|

# MASTER AGREEMENT

COVERING DRYWALL & ACOUSTICAL WORKERS AND LATHERS
IN THE STATE OF HAWAII

by and between

UNITED BROTHERHOOD OF CARPENTERS AND
JOINERS OF AMERICA, LOCAL 745, AFL-CIO,

and the

GYPSUM DRYWALL CONTRACTORS OF HAWAII

and

ANY OTHER PERSON, FIRM, CORPORATION OR OTHER ENTITY
THAT, PURSUANT TO THE PROVISIONS OF SECTION 3C.,
HEREOF, BECOME SIGNATORY HERETO

Effective September 1, 1997 to and including August 31, 2002

# TABLE OF CONTENTS

| Section Number and Title | Page |
|---|---|
| 1  DURATION | 1 |
| 2  COVERAGE | 1 |
| 3  RECOGNITION | 4 |
| 4  MUTUAL OBLIGATIONS AND RESPONSIBILITIES | 4 |
| 5  NON-ASSOCIATION CONTRACTORS | 4 |
| 6  UNION SECURITY | 5 |
| 7  AUTHORIZED DEDUCTIONS | 5 |
| 8  NO STRIKE OR LOCKOUT | 5 |
| 9  DISCIPLINE OR DISCHARGE | 6 |
| 10  WAGES | 6 |
|   Wage Schedule | 6 |
|   Payment of Wages | 6 |
|   Work on Pacific Ocean Islands Outside the State of Hawaii | 7 |
| 11  WAGE BOND | 7 |
|   Obligee | 7 |
|   Amount | 7 |
|   Claim | 7 |
| 12  HOURS AND OVERTIME | 7 |
|   Workweek | 7 |
|   Workday | 7 |
|   Overtime | 8 |
|   Meal Period | 8 |
|   Shift Work | 8 |
|   Show-Up Time | 8 |
|   Emergency Call-Out | 8 |
|   Temporary Work by Nonregular Employee | 9 |
| 13  TEMPORARY TRANSFER | 9 |
| 14  HOLIDAYS | 9 |
|   Holidays Falling On Saturday Or Sunday | 9 |
|   "Switching" And/Or Substitution of Any Holidays | 9 |
| 15  EMPLOYEE BENEFITS AND CONTRACTOR PAYMENTS | 9 |
|   Health and Welfare | 9 |
|   Pension Fund | 9 |
|   Training Fund | 9 |
|   Vacation and Holiday Fund | 9 |
|   Hawaii Carpenters Financial Security Fund | 10 |
|   Hawaii Carpenters Market Recovery Program | 10 |
|   Contribution Amounts | 10 |
|   Trust Documents | 10 |
|   Hawaii Drywall Industry Improvement Program | 10 |
|   Contractor Payments | 10 |
|   Qualification of Trustees | 11 |

| Section Number and Title | Page |
|---|---|
| 16  WORKING RULES | 11 |
|   Ratio of Journeymen To Foremen/ Working Foremen | 11 |
|   Drinking Water | 11 |
|   Height Pay | 11 |
|   Tools | 12 |
|   Safety and Protective Devices | 12 |
|   Personal Automobile | 12 |
|   Clean Up | 12 |
|   Listing Materials | 12 |
|   Lending Employees Prohibited | 12 |
|   Nonresident Contractor | 12 |
|   Contractor Working with Tools | 12 |
|   Work Under Union Agreement | 12 |
|   No Piece Work, Contract Work, or Moonlighting | 12 |
|   Notification Of Overtime Work | 13 |
| 17  TRANSPORTATION AND PARKING EXPENSES (ISLAND OF OAHU ONLY) | 13 |
|   Transportation | 13 |
|   Bad Road Transportation | 13 |
|   Parking Expenses | 13 |
| 18  SUBSISTENCE AND TRAVEL | 13 |
|   Travel and Subsistence | 13 |
|   Application Of Subsistence To Bonafide Residents Of Neighbor Islands Who Are Required By The Contractor To Live Away From Home On The Same Island | 14 |
|   Transportation (Applicable To The Islands Of Hawaii, Maui and Kauai) | 15 |
| 19  ACCESS TO JOB | 15 |
| 20  UNION STEWARD | 15 |
| 21  APPRENTICE | 15 |
| 22  HIRING AND REFERRAL PROCEDURE | 16 |
|   Notification | 16 |
|   Neighbor Island Hiring & Referral Offices | 16 |
|   Definitions | 16 |
|   Exclusive Referral | 16 |
|   Rejection of Applicant | 16 |
|   Nondiscrimination | 16 |
|   Register of Applicants | 16 |
|   Apprentices | 16 |
|   Out-of-Work Register | 16 |
|   Rejection by Contractor | 16 |
|   Exhausted Out-of-Work Register | 16 |
|   Posting | 16 |
| 23  JOINT INDUSTRY COMMITTEE | 16 |
|   General | 16 |
|   Scope and Authority | 16 |

| Section Number and Title | Page |
|---|---|
| Powers | 16 |
| Establish Own Rules | 16 |
| Quorum | 16 |
| Voting; Binding Decisions | 17 |
| Funds | 17 |
| Rights of Committee | 17 |
| Limitation of Liability | 17 |
| Outsiders Barred | 17 |
| 24 GRIEVANCE PROCEDURE | 17 |
| 25 ARBITRATION | 17 |
| 26 JURISDICTIONAL DISPUTES | 17 |
| 27 GENERAL SAVINGS CLAUSE | 17 |
| 28 CONTRACTOR REQUIREMENTS | 17 |
| 29 MODIFICATION OF AGREEMENT | 18 |
| 30 REPRESENTATIONS | 18 |

| EXHIBITS | | Pag |
|---|---|---|
| Exhibit "A" | Scheduled Wage and Benefit Increases | 1 |
| Exhibit "B" | Assignment of Wages to Cover Union Initiation Fees and Dues | 2 |
| Exhibit "B-1" | Payroll Deduction | 2 |
| Exhibit "C" | Assignment of Wages for Credit Union Payments | 2 |
| Exhibit "D" | Confirmation of Hiring Slip | 2 |
| Exhibit "E" | Certification of Receipt and Acceptance of the Master Agreement Covering Drywall and Acoustical Workers, and Lathers in the State of Hawaii, and Declaration of Trust Agreements Appurtenant Thereto | 2 |
| Exhibit "F" | Supplementary Apprentices Employment Procedures | 2 |
| Exhibit "G" | Drywall & Acoustical Workers in the State of Hawaii Tool List | 2 |
| Exhibit "G-1" | Lathers in the State of Hawaii Tool List | 2 |
| Exhibit "H" | Notice of Quits, Layoffs And/Or Terminations | 2 |
| Addendum I | Agreement Covering Drugs And Other Controlled Substances On Construction Job Sites In The State of Hawaii | 3 |
| Appendix "A" | Procedures For Medical Tests of Urine Samples | 3 |
| Appendix "B" | Substance Abuse Testing | 3 |
| Appendix "C" | Consent For The Release Of Confidential Information | 3 |
| Appendix "D" | Collection Stations For Drug Testing | 3 |
| Appendix "E" | Written Consent For Disclosure Of Information Contained In The Company's Records Concerning Participation In Employee Assistance Program For Alcohol Or Drug Abuse | 3 |
| Appendix "F" | Memorandum | 4 |

WITNESSETH

This Agreement is made and entered into by and between the United Brotherhood of Carpenters and Joiners of America, Local 745, AFL-CIO (hereinafter referred to as the "Union"), and the Gypsum Drywall Contractors of Hawaii, (hereinafter referred to as the "Association"), for and on behalf of those persons, firms, or corporations who are or who become members of said Association and who are or who become signatory to this Agreement pursuant to the provisions of Section 3C, hereof, (each such signatory member being hereinafter referred to as "Contractor"), and ANY OTHER PERSON, FIRM, CORPORATION, OR OTHER ENTITY THAT PURSUANT TO THE PROVISIONS OF SECTION 3C, HEREOF, BECOME SIGNATORY HERETO (each such signatory also being hereinafter referred to as "Contractor").

## SECTION 1. DURATION

This Agreement shall be binding upon the respective parties effective September 1, 1997 to and including August 31, 2002, and shall be considered as renewed from year to year, thereafter, unless either party hereto shall give written notice to the other of its desire to modify, amend, or terminate same. Any such notice must be given by the party desiring to modify, amend, or terminate the Agreement, at least one hundred fifty (150) calendar days prior to the expiration date, but not more than one hundred eighty (180) calendar days prior to the expiration date. In the event such notice is given, and only in such event, negotiations for a new Agreement shall commence as soon as possible after the date on which such notice is received by the other party, hereto. If such notice shall not be given, the Agreement shall be deemed to be renewed for the succeeding year.

## SECTION 2. COVERAGE

A. This Agreement covers all service and production employees classified as foreman, working foreman, journeyman and apprentices of the Drywall and Acoustical Industry, in the State of Hawaii, but excludes field and office clerical employees, confidential employees, professional employees, draftsmen, estimators, timekeepers, watchmen, and supervisors as defined in the National Labor Relations Act, as amended. This Agreement shall take precedence over any collective bargaining agreements entered into by the Association and/or Contractors with other trades executed after the effective date of this Agreement.

B. This Agreement further covers all work within the recognized jurisdiction of the Union, as established and recognized by the Building and Construction Trades Department of the AFL-CIO, or the Union Constitution. This work shall include, but shall not be limited to the following described work at the construction job site.

1. The installation of all materials and component parts of all types of ceilings regardless of their materials, or composition or method not limited to all hangers, carrying channels, cross furring, stiffeners, braces, all bars regardless of material or method of attachment, all integrated gypsum wall-board ceiling heat panels, all radiant ceiling heat fill, all main tees, all cross tees, all splines, all wall and ceiling angles or moldings, all backing board and all finish ceiling materials, regardless of method or manner of installation.

2. All work in connection with the installation, erection and/or application of all materials and component parts of walls and partitions regardless of their material composition or method or manner of their installation, attachment or connection, including, but not limited to all metal floor and ceiling runners, studs, stiffeners, cross bracings, fire blocking resilient channels, furring channels, door and windows, including frames, casing, molding, base, accessory trim items, gypsum drywall materials, laminated gypsum systems, backing board, finish board fireproofing of beams and columns, fireproofing of all types (regardless of material or method of application) and all spray applied fire resistant materials, except plaster and cementitious fireproofing and of chase, sound and thermal insulation materials, fixture attachments, including all layout work, preparation of all openings for lighting, air vents or other purposes, in order to keep the work area safe and to efficiently salvage usable material. The employees will clean up all materials, scraps, rubbish from and around the buildings and all other necessary or related work connected with the performance of the work covered under this Agreement, including but not limited to work known in the industry as "drywall clean-up and scrapping."

3. All work in connection with the application of gypsum cement or concrete/poured gypsum floor underlayment. The inclusion of this work shall be effective as of December 1, 1987.

4. No limitation shall be placed on the work covered by this Agreement by reason of the surface or texture or purpose for which the materials described, herein, are used, designed or intended, nor because of technological innovation which may alter the method of performing the covered work.

5. It is further specifically understood that the installation, tieing, and connection of all types of light iron and metal studs and all types of light iron furring erected to receive the materials specified in this subsection, including but not limited to gypsum wallboard, walls, partitions, ceiling heat panels, backing boards, plastic or acoustical materials or any material attached to the above described light iron construction is specifically included in the work covered by this Agreement.

6. The Union shall have jurisdiction over and shall be assigned the following work; erecting, constructing, installing and completing of all light iron construction, furring; false work and built up; making and erecting of brackets, clips, and hangers; wood, wire and metal lath; plaster board, dense glass, exterior sheathing board, foam board, or other material except foam board attached to concrete or masonry substrate with cementitious adhesive

1

which takes the place of same to which plastic, foam board or acoustical material is adhered; corner beads, all floor construction; arches erected for the purpose of holding plaster, cement, concrete, or any other plastic, to include but not limited to fiber glass, or acoustical material.

7. All carrying bars, purlins and furring, regardless of size; light iron and metal furring of all descriptions such as rods, channels, flat iron, nailock, screw lock, pomeroy, T-Bar, M-Bar, Z-Bar, metal splines and other ceiling bars or systems for the receipt of metal lath, rock lath, gypsum board, acoustical tile or any other materials and all light iron and metal studs such as Stran Steel, Penn Metal, Soule, Truscon, or other trade names of metal studs, and all other types of light iron or metal studs, no matter what the manufacturer, when such studs are to receive a drywall finish, such as gypsum board, wallboard, wooden paneling, etc. or when such studs are to receive metal lath, rock lath or other material for the application of plaster or other sprayed on wet material; and all other light iron furring erected to receive lath and plastic or acoustical materials.

8. The nailing, tieing, and fastening of all wire and metallic lath such as wirecloth, wire mesh, expanded metal lath, hyrib lath and all rib and flat expanded metal lath and wire of all descriptions as well as the placing of all hangers and all inserts used for the purpose of supporting suspended ceilings of any of the above types of light iron and metal furring which receive lath and plastic or acoustical materials; the placing of all types of floor lath, such as hyrib lath, paperback steeltex floor lath, Penn metal rib, and all other appurtenances connected, therewith.

9. The tieing, nailing, slipping, or fastening of all types of lath, regardless of size, such as wood lath, plaster board, button board, flaxinum board, bish-opric celotex, gypsum lath, rocklath, sheetrock, or any and all other types of material erected to receive or hold plastic or acoustical material.

10. The erection of any and all mechanical acoustical systems such as Cupples, Economy, Fiberlas, Jackson, Reynolds Aluminum, Securitee, Inerlock Grid, or any other type or kind which takes the place of same to which acoustical materials is attached or adhered.

11. The erection of all metal plastering accessories such as metal corner beads, door and window casing beads, metal picture, mold, metal chair rail, metal base and base screed, and any and all other metal plastering accessories which are covered and/or serve as a ground, guard, or screed for plastic material.

12. Installation of reinforced concrete construction where such agreements prevail.

13. Such other work related to the above as such other work may now exist or may come into being as a result of the development of new methods and new material.

14. The handling of the job site of all material or materials falling within the above trade jurisdiction from the site of delivery on the job to the point of the job where work is to be performed with said materials.

15. FORM CARPENTER - Makes, sets and strips forms used in concrete work. Prefabs or constructs and erects forms for footings, foundations and/or slab edges of houses, buildings, structures of all descriptions, whether made of wood, metal, plastic or any other type of material; fabricates or erects forms for walls, columns, beams, floors, decking and other structural parts of houses, building, or any structure and strips/dismantles all forms to be re-used. Fabricates, erects, and dismantles all falsework. Where power is used for setting or dismantling of forms or any other material erected by Carpenters, all handling and signaling shall be done by Carpenters. (NOTE: Intent is not to claim jurisdiction of operating engineers.)

The fabricating and/or setting of all templates including anchor bolts necessary for structural members or machinery and the placing and/or leveling of these bolts is included.

All framing in connection with the setting of metal forms. The setting of all forms, centers and bulkheads, the fabrication and setting of screeds and stakes for concrete and mastic floors where the screed is notched or fitted or made up of more than one member. Setting of forms for sidewalks, curb and gutters, and all welding incidental to carpentry.

All handling, signaling in the air, receiving, placing, welding, bolting, setting, plumbing, aligning and securing of all precast, prestressed and post-stressed concrete work.

The operation of slip forms, jump forms or lift slab machinery whether operated manually or operated mechanically by portable operating devices, used to handle material to be installed or erected by members of the United Brotherhood of Carpenters and Joiners of America and all tagging (tagline used as temporary braces) and signaling incidental to the trade.

The erecting of wood cooling towers and wood tanks.

16. FRAMER/ROUGH CARPENTER - Layout, cutting, framing, joisting, sheathing, stacking, siding, exterior finish (does not include EFS, GRFC or similar products) and pick-up work in the erecting of structural parts of a house, building or structure made of wood or any substitute such as plastics, metal or composition materials; this includes and is not limited to walls, floors, roofs, ceilings and partitions; the layout, cutting, assembling and erecting of rough stair carriages and platforms. Installs all prefabricated window frames and strip jalousies.

The laying out of all work and operation of all tools and equipment for cutting, handling, assembling, fabrication of all prefabricated structural members

whether done at the job., , , construction compound. (NOTE: Does not cover cabinet shops or truss manufacturing plant.)

The installation of all moldings and trims made of wood, plastic, or composition material.

17. FINISH CARPENTER - The jobsite fabrication and/or installation of all interior finish work. The jobsite fabrication, setting, hanging and/or installation of wood, metal, plastic and composition doors, sash, jambs, bucks, casings, windows and other frames, mouldings, chair rails, mantels, base or mop boards, wainscoting, furniture (headboards and other screwed down items), vanities, countertops, wardrobes, framework, partitions and trim materials for bathrooms made of wood, metal or plastics or composition materials; stocking, handling and installation of all hardware; installation of all prefinished wall paneling (does not include prefinished metal panels), mirror closet and other doors and other prefinished components; installation of bowling alleys and exhibits and displays.

The installation of wood, plastic or metal awnings, door shelters, and marquees. The fabrication/installation/erection of raised/elevated floors.

Building and erecting stairs, shelving, racks whether of wood or other materials; making and fitting of wood screens; putting on weather strips and caulking. The installation of laboratory equipment including cabinets and work benches, bookcases, blackboards, bulletin boards, bill boards, meterboards and boards of all types.

The laying out and jobsite manufacturing, either by hand or machine, all easements and casements, newal posts, stringers, risers, treads, wainscoting or panel work for stairs; the making of moulding for stairs; the erecting of the stairs complete, including the furring, both of sides and underneath same; working and erecting of all hand rails and balusters. (NOTE: Does not cover metal stairs in high rise buildings, but does cover all other types of stairs even where underground.)

The assembling and setting of all seats in theaters, halls, churches, schools, banks, stadiums, and open-air theaters and other buildings (NOTE: Does not cover metal bleachers.)

18. GARAGE DOOR INSTALLERS - installs garage doors whether it be manual or automatic, sliding, swinging or overhead, including but not limited to setting the tracks and/or runners, assembling the panels, installing of all hardware, and installing and hooking-up the motor when called for; adjusting, testing, repair and maintenance.

19. MILLWRIGHT AND MACHINE ERECTORS - shall mean the dismantling, aligning, erecting, assembling, repairing, maintenance, and adjusting of all permanent machinery and equipment installed in buildings, factories, structures, processing areas either under cover, under ground or elsewhere required to process material, handle, manufacture or servicing.

20. PIL.. ..ER/SHEETPILER, CAISSON DRILLER - handles the drilling, driving, and/or placement of piles for any type of structure irrespective of material composition of pile(s). All carpentry (piledriver) type of work connected with the construction of any pier, wharf, dock, cofferdam or structural foundation. Piledriving includes the complete construction of all templates (temporary or permanent) including welding. The operation of all piledriving hammers, extractor, or other type power pack if controlled remotely from the crane operator (the crane operator and assistants to the engineer are not included in this classification.) All piledriving and/or carpentry work performed on a stationary or floating barge with the exception of barge winch, crane operators and assistants to the engineer. The installation of interlocking contiguous or parallel sheet pile walls (not means to include either skip sheet or wood plank trench shoring.)

21. POWER SAW OPERATOR (2 h.p. and over) - handles any powered saw 2 horse power or more. Makes his own cut list or takes a cut list from others and cuts material to size.

22. HARDWOOD FLOORLAYER - shall cover the laying and finishing of all hardwood floors, the installation of all accessories related to the laying, scrapping and sanding either by hand or machine, all wood, wood block, and wood composition.

23. PATENT SCAFFOLD ERECTOR (14 ft. and over) - handles, erects and dismantles patent scaffolds. When over 14 feet in height, erection will be from ground/base/floor up. When used for shoring it will be done by Carpenters regardless of height.

24. PNEUMATIC NAILER - handles tools used for nailing, powered by compressed air or gas.

25. TRANSIT AND/OR LAYOUT MAN - works off of surveyors' established points and elevations, lays out the location of the building to be built and establishes control lines to layout the building. Does the building layout as well as the interior layout with or without the use of a transit or other instruments. Also gives elevation lines.

26. WOOD SHINGLER - applies wood shingles and/or shakes to roofs and/or walls of a structure.

27. DIVERS/UNDERWATER CONSTRUCTION WORKERS - handles all diving incidental to CARPENTERS/PILEDRIVERS/SHEETPILERS/CAISSON DRILLER work. (Does not cover undersea cables, pipes or outfalls, force mains and dredging.)

28. WELDERS - handles all welding incidental to Carpenters work.

29. ALLIED WORKERS - handles erection and dismantling of wood or wood substitute protective barriers (exterior site barricades and primary encapsulating barricades that do not touch any asbestos) connected with the removal, abatement or demolition of asbestos containing material ("ACM") and/or other hazardous materials.

3

30. ACOUSTIC AND DRYWALL APPLICATOR; IN-SULATORS - shall perform all work in connection with the installation, erection and/or application of all materials and component parts of walls, partition floors, ceilings and roofs, regardless of their material composition or method or manner of their installation, attachment or connection, including but not limited to all types of light iron and metal furring, runners and studs; gypsum drywall materials and laminated gypsum systems; fireproofing, sound and thermal insulation materials; fixture attachments; and all layout work incidental to the trade.

No limitation shall be placed on the work covered by reason of the surface or texture or purpose for which the materials described herein are used, designed or intended. All distribution and handling of materials on the jobsite from the building or floor stock pile or individual rooms in the case of a high rise.

31. LATHERS - shall perform the erecting, constructing, installing and completing of all light iron construction including but not limited to all carrying bars, purlins and furring, regardless of size; all light iron and metal furring and studs of all descriptions; all types of lath, regardless of size and composition - wood, wire, metal, plaster board or any other material which takes the place of the same, erected for the purpose of holding plaster, cement, concrete or any other plastic or acoustical material. All distribution and handling of materials on the jobsite from the building or floor stock pile or individual rooms in the case of a high rise.

The above classification of work shall be in compliance with any jurisdictional agreements between international unions.

C. This Agreement covers provisions in the Employee Retirement Income Security Act (ERISA) of 1974.

### SECTION 3. RECOGNITION

A. The Association and each Contractor covered hereby recognizes the Union as the exclusive representative of all employees covered by this Agreement.

B. The Union recognizes the Association as the exclusive collective bargaining representative of its individual members who are, or who become signatory to this Agreement.

C. Contractor coverage under this Agreement shall be accomplished by Contractor signature and Union counter-signature of the "Memorandum of Agreement and Certification of Receipt and Acceptance" form, a copy of which is attached hereto as an Exhibit "E" and made a part, hereof.

D. The Association will notify the Union in writing of new Contractor members who are, or who become signatory to this Agreement, and it shall also notify the Union, in writing, whenever any Contractor memberships are terminated or cancelled.

E. General Contractors doing drywall and lath work must be a party to the Agreement covering drywall and acoustical workers, and lathers in the State of Hawaii.

F. **Recognition of 9(a) Status:** The Union claims and the Contractor acknowledges and agrees, that a majority of its employees performing covered work have authorized the Union to represent them in collective bargaining. The Union has offered to establish its majority status by allowing Contractor to examine authorization cards voluntarily executed by employees in the appropriate unit and Contractor is satisfied that the Union represents such majority and has waived the opportunity to examine such cards; therefore, Contractor recognizes, pursuant to Section 9(a) of the LMRA the Union as sole and exclusive bargaining representative of all employees covered under this Agreement performing bargaining unit work.

### SECTION 4. MUTUAL OBLIGATIONS AND RESPONSIBILITIES

A. By ratification of this Agreement, the Contractor guarantees that he will pay specified wage rates, make certain contributions toward employee benefits, and provide certain terms and conditions in return for the services and labor of employees covered, hereby.

B. In consideration of the above, each employees covered by this Agreement has a definite obligation and responsibility to better their efficiency, to upgrade their skills and to perform a full eight (8) hours work each and every workday.

C. In line with this, the Union and the Association, hereby, commit themselves to cooperate with one another in the development of ways, means and programs that will make for a more efficient, productive, and responsible work force, and which will otherwise re-kindle pride in the Drywall and Acoustical crafts and their rightful status within Hawaii's construction industry.

### SECTION 5. NON-ASSOCIATION CONTRACTORS

A. Because of the costs incurred by the Association in developing and administering the Hawaii Carpenters Drywall Training Fund and Program, and other funds, and in performing other services in behalf of all Drywall and Acoustical workers and Contractors engaged in the Drywall and Acoustical industry in the State of Hawaii, as well as the Association's services to said Industry, as provided by and through the Grievance Procedure, the Joint Industry Committee, and by otherwise administering this Agreement, every Contractor covered by or signatory to this Agreement who is not a member of the Gypsum Drywall Contractors of Hawaii, shall pay a monthly fee, equivalent to 10% of the total cost of benefits paid by the non-association contractor. Fringe benefits shall include but are not limited to all payments made to the following Funds: The Hawaii Carpenters Health and Welfare Fund, the Hawaii Carpenters Pension Fund, the Hawaii Carpenters Financial Security Fund, the Hawaii Carpenters Vacation and Holiday Fund, the Hawaii Carpenters Market Recovery Fund, the Hawaii Carpenters Apprenticeship and Training Fund, and the Hawaii Drywall Training Fund. The Administrator of the various Trust Funds shall provide the Gypsum Dry-

wall Contractors of Hawaii w... ...thly report of the total fringe benefits paid by such non-association contractor. The Association may, but shall not be required to contract with the Trust Fund to collect the monthly fee on behalf of the Association.

B. In consideration of such fee the Gypsum Drywall Contractors of Hawaii, will provide the aforesaid service to said non-association Contractor in the same manner as if he were a member of said Association.

C. Any other provisions to the contrary, notwithstanding, the Union may terminate this Agreement with any Contractor who fails to pay this fee to the Association(s) as provided herein. In no event, however, shall the Union force any Contractor to join the Association.

## SECTION 6. UNION SECURITY

A. Each employee covered by this Agreement shall, as a condition of continued employment, become a member of the Union not later than the eighth (8th) day following the date of his employment, or the execution date of this Agreement, whichever is later, and he shall, thereafter, maintain such membership in good standing by continuing to tender dues to the Union for the duration of this Agreement.

B. This Union agrees to consider for membership all present and future employees who apply for membership. If an applicant is denied membership by the Union, he shall not be required to comply with the provisions of this Section.

C. If any employee fails to pay or to tender the normal, regular Union initiation fee and dues, said employee shall, upon written notice to the Contractor from the Union, be discharged.

D. The Union shall be promptly notified whenever an employee covered by this Agreement is hired. This notification may be accomplished either by return of a contractor-signed copy of the Union's referral slip or by submission of a Confirmation of Hiring Form.

## SECTION 7. AUTHORIZED DEDUCTIONS

A. If an employee signs proper authorization form (sample copies of which are attached, hereto, as an Exhibit), the Contractor shall deduct from the wages of said employee, all Union dues, Union initiation fees, Union assessments, and Carpenters' Federal Credit Union payments, which are due for said employee. Except as provided in paragraphs C and D below, the aforesaid deductions shall be made on a once-a-month basis only.

B. In requesting deductions for "assessments," the Union shall restrict such request to assessments assessed on all members of the Union employed by the Contractors covered, hereby, or signatory, hereto, on a uniform basis as an incident of membership in the Union.

C. No deduction for Union dues, initiation fees, assessments, and Credit Union payments shall be made unless the employee has at least twenty (20) hours of wages due for the week.

D. If the employee's earning for the payroll period from which the aforesaid deductions are made amount to less than twenty (20) hours of wages, then deductions from said employee's wages shall be made from the next succeeding weekly pay period from which he does have twenty (20) hours of wages or more due him and for each such weekly pay period, thereafter, until the full amount of said employee's obligations to the Union and/or Credit Union are satisfied.

E. All monies deducted pursuant to this Section shall be transmitted by the Contractor to the Union and/or to the Credit Union, as the case may be, within fifteen (15) calendar days after the deduction is made. Said transmittal shall be by way of check drawn to the order of the Union, and/or Credit Union, as the case may be.

F. In the event the Joint Industry Committee determines that a Contractor has intentionally violated this Section, it shall impose the following penalties on said Contractor:

(1) liquidated damages in the amount of twenty percent (20%) of such delinquent and unpaid dues or twenty dollars ($20.00), whichever is greater, for each and every delinquent monthly amount;

(2) all audit and collection costs, and

(3) if the delinquency is turned over to an attorney for collection, reasonable attorney's fees in the amount of twenty-five percent (25%) of the amounts specified in (1) and (2) above, and all costs of action.

G. Upon issue of such check(s) and the transmission of same to the Union and/or Credit Union, as the case may be, all responsibility on the part of the Contractor shall cease with respect to any amount so deducted, so long as such check(s) are honored on being presented for payment. The Union hereby undertakes to indemnify and hold the Contractor harmless from any claims that may be made upon said Contractor for, or on account of any such deductions from the wages of any employee.

H. All deductions and assessments shall comply with all State and Federal laws.

I. Contractors acknowledge that dues deductions are employee wages and that failure to transmit said dues once deducted in an unlawful retention of monies that do not belong to Contractors.

## SECTION 8. NO STRIKE OR LOCKOUT

A. The parties hereto agree that during the term of this Agreement there shall be no lockout by the Contractor, nor any strike, stoppage of work, or slowdown on the part of the Union or its representatives or on the part of any employee covered by the terms of this Agreement, except as provided under paragraphs B, C, and D, below.

B. Nothing in this Agreement shall be construed as giving a Contractor the right to require his employees to cross a legitimate picket line. A legitimate pick line is one that is not in violation of the law.

Employees who exercise their option of refusing to cross a legitimate picket line shall not be disciplined, discriminated against, or suffer any adverse treatment by the Employer.

5

C. If a Contractor fails to make a payment to any of the Trust Funds provided for in this Agreement, OR if he fails to make timely transmittal of amounts deducted for Union dues, initiation fees, assessments, and/or Credit Union payments, as provided for under Section 7 (Authorized Deductions), and so long as either of these conditions continue, it shall not be a violation of this Agreement for the Union to withdraw its members from the performance of work for said Contractor. In each case the Union shall give written notice to the Contractor involved of its intent to withdraw his employees, and the Contractor shall be given five (5) working days from receipt of said notice in which to make necessary full payment. If such full payment is not made within said five-day period, the Union shall then be free to withdraw his employees and to continue said withdrawal until full payment is made.

D. If, under the provisions of Section 24 (Grievance Procedure and Arbitration), a determination is made by the Joint Industry Committee or the Arbitrator, as the case may be, that a Contractor covered by this Agreement is using an "alter-ego" or single/joint employer operation to circumvent the provisions of this Agreement, it shall not be a violation of this Agreement for the Union to withdraw its members from the performance of work from said Contractor.

E. It is mutually understood and agreed that neither the Association, the Contractor, or the Union shall be liable for damages caused by the acts or conduct of any individual or group of individuals who are acting or conducting themselves in violation of the terms of this Agreement, provided that such action or conduct has not been specifically authorized, participated in, fomented, or condoned by the Association, any Contractor, or the Union, as the case may be.

F. In the event of any unauthorized violation of the terms of this Agreement, responsible and authorized representatives of the Union, the Association, or the Contractor, as the case may be, shall promptly take such affirmative action as is within their power to correct and terminate such violation for the purpose of bringing such unauthorized persons into compliance with the terms of this Agreement. Such individuals acting or conducting themselves in violation of the terms of this Agreement shall be subject to discipline, up to and including discharge.

## SECTION 9. DISCIPLINE OR DISCHARGE

A. The Contractor may discipline or discharge any employee only for just cause.

B. A probationary period of ten (10) working days, shall be established for all new employees, and such new employees shall be furnished the reason for his discharge in writing within two (2) working days.

C. Any discharged employee, other than probationary employees, shall be furnished the reason for his discharge in writing.

D. If the Contractor takes action under this Section, which the employee or the Union believes is improper or unjustified, the employee and/or the Union shall have the right to process such grievance through the Grievance Procedure, as provided under Section 24 (Grievance Procedure) and Section 25 (Arbitration).

## SECTION 10. WAGES

A. **Wage Schedule:**

Attached hereto as Exhibit "A," and made a part of this Agreement is the Wage Schedule which shall be effective for the term of this Agreement.

B. **Payment of Wages.**

1. Wages shall be paid weekly. The employee shall receive all wages due no later than quitting time on the employee's normal pay day.

2. No more than one (1) calendar week's wages shall be withheld at any one time.

3. In the event the employee's normal pay day falls on a holiday (whether recognized by this Agreement or not), on which local banks will be closed, the Contractor will provide the employee with his pay check on the day preceding the holiday.

4. Unless due to an emergency situation, or other verifiable extenuating circumstances acceptable to the Joint Industry Committee, where an employee's paycheck is not available for him on the jobsite by quitting time on his normal pay day, said employee shall be entitled to a penalty payment of eight (8) straight time hours for each working day that said paycheck is not available (including the day on which said paycheck was due). In addition, the Contractor shall also pay the employee for any finance charges or penalties (such as checking account overdraw charges, late payment charges, interest penalties and the like) that are charged to an employee as a result of a late paycheck or a paycheck "bouncing," due to insufficient funds. The Contractor shall also reimburse the employee for the cost of any long-distance telephone calls relating to the matter, as may be made by the employee. The payment of such penalties and reimbursement of charges to the employee is not "wages" subject to employment taxes and withholding.

5. When an employee is laid off for lack of work, said employee shall be paid all wages earned and due as of the time of separation on the employee's last day of work.

6. When an employee is discharged for cause, said employee shall be paid all wages due at the time of discharge. However, if the discharge occurs at a time and under conditions which prevent the Contractor from making immediate payment then all wages due must be paid to the employee no later than quitting time on the working day following the date of discharge.

7. When an employee quits, said employee shall be paid all wages due no later than the next regular pay day, either through regular pay channels, or if requested by the employee, by mail.

8. When an employee sustains an industrial injury or illness covered under the State of Hawaii Workers' Compensation Law, he shall be paid his full wages

on the day on which the injury/illness occurred as long as the employee provides the Contractor with a physician's statement verifying his treatment and disability for the remainder of the day. The employee shall be allowed to go to a physician of his choice.

9. If a Contractor is delinquent in the payment of wages due to any of his employees, his employees may stop work until the delinquent wages are paid, and such work stoppage shall not be deemed a violation of this Agreement.

10. Contractors must maintain a bank account with a local Hawaii bank or financial institution and all payroll must be drawn from such local bank or financial institution.

C. **Work on Pacific Ocean Islands Outside the State of Hawaii.**

If an employee, who is hired in the State of Hawaii, is required by the Contractor to report to work on any Pacific Ocean Islands outside the State of Hawaii, said employee shall be paid at no less than the wage rates specified in an Exhibit (which is attached hereto). The Contractor shall also make payments to the Financial Security Fund, Market Recovery Program, Health and Welfare Trust Fund, the Pension Trust Fund, the Vacation and Holiday Fund and to the Training Fund and any other fund that may be established during the term of this Agreement.

## SECTION 11. WAGE BOND

Any Contractor who fails, at any time, to pay the wages to his employees when due, shall on demand of the Union immediately post a wage bond or an equivalent amount in cash-in-escrow with the Union, during the term of this Agreement in the following manner:

A. **Obligee:** Each Contractor, as a principal and bonding company as surety, shall name the Union as obligee of the bond.

B. **Amount:** The amount of the bond or cash-in-escrow shall be based on the number of bargaining unit employees employed by the Contractor times the existing straight time rate of pay for said employee, per hour, times eighty. Adjustment in the bond or cash-in-escrow amount, if necessary, shall be made on December 1, March 1, June 1, and September 1.

C. **Claim:** Claims for two weeks' wages against the bond or cash-in-escrow, shall be made by the Union if wages due any employee of a Contractor are not paid within two (2) weeks from the due date and the Union agrees that in making such claim against the bond or cash-in-escrow, and in collecting such wages from either the surety company or cash-in-escrow or from the Contractor, it will be acting as the agent of such unpaid employees and after such unpaid collection it will promptly remit full payment to the employees of the amount due each of them.

## SECTION 12. HOURS AND OVERTIME

A. **Workweek**

1. The standard workweek shall be Monday through Friday, inclusive.

2. However, in the event that weather, equipment breakdown, power failure, accident which results in fatality, and/or any other condition or circumstance which is beyond the control of the Contractor prevents employees from starting work on any one or more of the regularly scheduled Monday through Friday workdays or prevents employees from working a full shift on any of said days, then Saturday, at the Contractor's option, may be scheduled as a make-up day at the employee's regular straight time rate. On said Saturday, the straight time rate shall apply for the employee's first eight (8) hours of work or upon completion of forty (40) straight time hours of work for that week, whichever occurs first; one and one-half (1½) times the employee's regular straight time rate for all hours worked, thereafter.

3. Also, subject to mutual agreement with the Union, the Contractor may establish a workweek of four (4) ten (10) hour days on weeks where a holiday is observed.

4. Overtime at one and one-half (1½) times the employee's regular straight time rate shall be paid for:

(a) all work performed in excess of eight (8) straight time hours in any one day, OR

(i) in excess of ten (10) straight time hours in any one day where a workweek of four (4) consecutive ten (10) hour days has been scheduled by mutual written agreement between the Contractor and the Union.

(ii) in excess of nine (9) straight time hours, Monday through Thursday, and four (4) hours on Friday where such a workweek has been scheduled by mutual written agreement between the Contractor and the Union.

(b) all work performed in excess of forty (40) straight time hours in any one week.

NOTE: At the present time paragraphs 2 and 3 above, are applicable ONLY on PRIVATE and FEDERAL jobs. The law would have to be changed in order for said paragraphs to be applicable on State or County projects.

B. **Workday**

Except where shift work or night work is scheduled the normal workday shall begin between the hours of 6:00 a.m. and 8:00 a.m., provided, however, that if a State law, local ordinance or job specification requires that work not commence until a later hour, then the starting time for such job shall be established in accordance with said law, ordinance, or job specification, and provided further, that other starting times, also without payment of overtime, may be established by mutual agreement between the Contractor and the Union.

C. Overtime

1. **Monday through Friday**

    Overtime at one-and-one-half (1½) times the employee's regular straight time rate shall be paid for:

    (a) All work performed before a shift begins and after it ends.

    (b) All work performed in excess of eight (8) straight time hours in any one day, or in excess of forty (40) straight time hours in any one week; provided, however, that all work performed in excess of ten (10) hours in any one day, Monday through Friday, shall be paid for at two (2) times the employee's regular straight time rate.

2. **Saturday Work**

    All work performed on Saturday shall be paid for as follows: One-and-one-half (1½) times the straight time rate for the first eight (8) hours, and two (2) times the regular straight time rate for all work performed after eight (8) hours; provided, however, that if Saturday is being worked as a "make-up" day, then the payment provisions as set forth in Section 12 A.2., shall apply.

3. **Sunday Work**

    All work performed on Sundays shall be paid for at two (2) times the employee's regular straight time rate.

4. **No Pyramiding**

    Whenever two (2) or more overtime or premium rates are applicable to the same hour or hours worked, there shall be no pyramiding, or adding together of such rates and only the higher of the applicable rates shall be applied.

5. **Assignment Of Overtime Work**

    If any overtime work is to be assigned, the work shall be assigned to the members of the crew (to the extent needed) who, during the regular workday, had been performing the work involved; provided, however, that whenever overtime work is to be worked on the project on which the Union Steward is working, said Steward shall be offered the first opportunity to perform said overtime work, provided he is qualified and competent to perform the work required.

D. Meal Period

1. An employee covered by this Agreement shall be afforded a meal period of at least thirty (30) minutes, to begin within the period from the third through the fifth hours of a shift. If an employee is required to work more than five hours without starting a meal period, said employee shall be paid at the applicable overtime rate for all time worked after said fifth hour until such time as he is afforded the opportunity to eat.

2. If the employee is already being paid at an overtime rate by reason of Saturday, Sunday or Holiday work the aforementioned meal period penalty shall be computed as follows:

    (a) If working at a time-and-one-half (1½) rate, he shall receive two (2) times his regular straight time rate for all time worked after said fifth hour until such time as he is afforded the opportunity to eat.

    (b) If working at a double time rate, he shall receive two-and-one-half (2½) times his regular straight time rate for all time worked after said fifth hour until such time as he is afforded the opportunity to eat.

    (c) When overtime work exceeds two-and-one-half (2½) hours past quitting time, employees shall be afforded a meal period of at least one-half (½) hour at the end of said two-and-one-half (2½) hours. The Contractor shall provide the employee(s) with a meal of good quality.

E. Shift Work

1. Where a two or three shift operation is scheduled, an employee shall be paid as follows:

    **First Shift:** At the employee's regular straight time rate.

    **Second Shift:** At the employee's regular straight time rate PLUS a premium of $.50 per hour.

    **Third Shift:** At the employee's regular straight time rate PLUS a premium of $1.00 per hour.

2. On single or double shift operations, any shift starting after 12 noon and prior to 10:00 p.m. shall be paid for as a second shift, and any shift starting after 10:00 p.m. and prior to 4:00 a.m. shall be paid for as a third shift.

3. On shift work: (a) men working a shift who come off work on Saturday morning are to be considered working Friday; (b) men working a shift coming off on Sunday morning are to be considered working Saturday; and (c) men working a shift coming off work on Monday morning are to be considered working Sunday.

F. Show Up Time

Employees or qualified applicants ordered to report for work at a job site and for whom no work is provided shall be entitled to two (2) hours of straight time pay. If the employee begins work, he shall be entitled to four (4) hours of work and/or pay for that day, unless he quits, voluntarily lays off, or is suspended or discharged for cause, prior to the completion of said four (4) hour period.

G. Emergency Call Out

Any employee called out to perform emergency work, and who so reports at the time specified, shall be paid at the applicable overtime rate for all hours worked on such emergency call out. Such employee shall receive a minimum of four (4) hours work, or if four (4) hours work is not furnished, a minimum of four (4) hours pay; provided, however, that such four (4) hour minimum shall not apply if the employee quits, voluntarily lays off, or is suspended or discharged prior to the completion of said four (4) hour period. Said four (4) hour minimum shall also not apply if the emergency work for which he is called out continues up to his normal

starting time, in which event the employee shall be paid at the overtime rate only for the actual number of hours worked up to his normal starting time.

In computing time spent on emergency call out, such time shall include time spent in traveling from the employee's home or the place from which he was called, as the case may be, directly to the job site, but shall not include the return trip.

H. **Temporary Work by Nonregular Employee**

When a nonregular employee is called to perform temporary work of one (1) or two (2) days duration, such employee shall, after performing six (6) or more hours work in any one day, be afforded the opportunity to complete a full day's work of eight (8) hours at his regular straight time rate as long as the job is working, unless he quits, voluntarily lays off, or is suspended or discharged, prior to the completion of said full day's work.

## SECTION 13. TEMPORARY TRANSFER

A. An employee covered by this Agreement will not be transferred to perform work outside of his craft, except in the event of non-availability or failure to report of the craftsmen called for, or in the event of emergency.

B. When an employee is required to work temporarily on a job of a higher classification covered by this Agreement, he shall receive the pay of the higher classification.

C. When an employee is required to work temporarily on a job of a lower classification covered by this Agreement, he shall receive the pay of his regular wage classification unless such change is made permanent.

D. A transfer made for the convenience of an employee shall not be deemed a temporary transfer, irrespective of the duration of the transfer.

E. This Section shall not apply to grievances or claims by a Working Foreman that he is performing the work of a Foreman.

## SECTION 14. HOLIDAYS

A. The following days shall be considered holidays and work performed on said days shall be compensated for as follows:

1. At One-And-One-Half (1½) Times The Employee's Straight Time Rate

| | |
|---|---|
| New Year's Day | Columbus Day |
| Presidents' Day | Veterans' Day |
| Memorial Day | Thanksgiving Day |
| Kamehameha Day | Christmas Day |
| Fourth of July | |

2. At Three (3) Times The Employee's Regular Straight Time Rate

Labor Day

B. **Holidays Falling On Saturday or Sunday**

In the event any of the above-listed holidays falls on a Saturday, the preceding Friday shall be considered the holiday. In the event any of the ten (10) above-listed holidays falls on a Sunday, the following Monday shall be considered the holiday.

C. **"Switching" And/Or Substitution Of Any Holidays**

On a project-by-project basis, the Contractor may, by written mutual agreement with the Union, "switch" any of the ten (10) above-listed holidays to a day other than the day on which it falls, and/or to substitute the day after Thanksgiving as a holiday in place of any of the ten (10) listed holidays. The Contractor will notify the Union of its desire to "switch," and/or substitute any of the above holidays. Such notification shall be made at least five (5) calendar days prior to the effective date of any "switch" in holidays.

NOTE: At the present time, paragraph C., immediately above, can be applied without penalty ONLY to PRIVATE and FEDERAL projects. With respect to State and County projects, however, State law requires that the time-and-one-half (1-1/2) rate be paid for any work performed on State and County recognized holidays.

## SECTION 15. EMPLOYEE BENEFITS AND CONTRACTOR PAYMENTS

A. **Health & Welfare**

1. Each Contractor shall participate in the Hawaii Carpenters' Health & Welfare Fund (hereinafter referred to as the "Health and Welfare Fund") under the terms and conditions as set forth in the Hawaii Carpenters' Health & Welfare Fund Declaration of Trust Agreement, as executed December 28, 1977, and as it may be amended in the future and at the rates set forth in Exhibit A.

B. **Pension Fund**

1. Each Contractor shall participate in the Hawaii Carpenters' Pension Fund (hereinafter referred to as the "Pension Fund") under the terms and conditions as set forth in the Hawaii Carpenters' Pension Fund Declaration of Trust Agreement, as executed December 28, 1977, and as it may be amended in the future and at the rates set forth in Exhibit A.

C. 1. **Training Fund**

Each Contractor shall participate in the Hawaii Carpenters' Drywall and Lather Training Fund (hereinafter referred to as the "Training Fund") under the terms and conditions as set forth in the Hawaii Carpenters' Training Fund Declaration of Trust Agreement as executed December 28, 1977, and as it may be amended in the future and at the rates set forth in Exhibit A.

D. **Vacation and Holiday Fund**

1. Each Contractor shall participate in the Hawaii Carpenters' Vacation and Holiday Fund (hereinafter referred to as the "Vacation and Holiday Fund") under the terms and conditions as set forth in the Hawaii Carpenters' Vacation and Holiday Declaration of Trust Agreement as executed December 28, 1977 and as it may be amended in the future and at the rates set forth in Exhibit A.

2. All taxes due from each employee by reason of payments under this Vacation and Holiday Fund shall be deducted by each Contractor from each employee's wages and such total tax deductions, together with the amount payable under this Vaca-

tion and Holiday Fund shall be separately noted on the employee's paycheck.

3. Interest earned on Vacation and Holiday Funds, as deposited by the Administrative Office in accordance with the directions and actions of the Trustees, shall be transferred to a revolving account which shall be used to pay Trustee approved expenses for implementing and administering the Vacation and Holiday Fund.

4. Vacation and Holiday payments shall be made in accordance with the "Rules and Procedures Governing Vacation and Holiday Payments," or as such rules and procedures may be subsequently amended by the Trustees of the Vacation and Holiday Fund.

E. **Hawaii Carpenters Financial Security Fund**

1. Each Contractor shall participate in the Hawaii Carpenters' Financial Security Fund (hereinafter referred to as the "Security Fund") under the terms and conditions as set forth in the Hawaii Carpenters Financial Security Fund Declaration of Trust Agreement, as executed December 31, 1987, and as said Trust Document may be amended in the future and at the rates set forth in Exhibit A.

F. **Hawaii Carpenters Market Recovery Program**

1. Each Contractor shall participate in the Hawaii Carpenters' Market Recovery Program (hereinafter referred to as the "Recovery Program") under the terms and conditions as set forth in the Hawaii Carpenters' Market Recovery Program Declaration of Trust Agreement as executed December 31, 1987 and as said Trust Document may be amended in the future, and at the rates set forth in Exhibit A.

G. **Contribution Amounts**

Contribution amounts for each of the Funds or Programs shall be as set forth in Exhibit A to this Agreement, which is part of this Agreement in all respects and incorporated by reference.

H. **Trust Documents**

Each of the Declaration of Trust Agreements as referred to above are, by reference, incorporated herein and each Contractor covered hereby or signatory hereto agrees that he shall be bound by all the terms and conditions of said documents. Each said Contractor further agrees to the appointment of the Trustees of said Funds as designated by the Contractor Associations and hereby designates said Contractor Trustees to serve as his representatives and to act as his agent in all matters concerning the Funds.

I. **Hawaii Drywall Industry Improvement Program**

1. Effective as of the date listed below, each Contractor shall contribute to the Hawaii Drywall Industry Improvement Program for each hour worked by each employee and at the rates set forth in Exhibit A hereto.

2. In accordance with the documents establishing said Program, said Funds and Program shall be administered by the Gypsum Drywall Contractors of Hawaii for and on behalf of itself and other partici-

pating Associations. Each Contractor covered hereby or signatory hereto agrees to the appointment, as his representatives, of the Trustees and Directors of said Program as designated by said Association and hereby designates said Trustees and Directors to act as his agents in all matters concerning the Fund.

3. Said Funds shall be used for purposes, programs and staffing in matters and areas which are designed to service and improve the Drywall & Acoustic Industry in the State of Hawaii, such as education and training, communications, market development legislation. Equal Opportunity, Davis-Bacon and other matters involving government regulatory, enforcement, and contracting agencies, grievance handling and other contract interpretation and administration matters, and the resolution of other problem areas affecting the Drywall and Acoustic Industry which may arise.

J. **Contractor Payments**

1. **Transmittal of Contributions.**

Any other provisions to the contrary notwithstanding, Contractor contributions to the various Funds as specified and provided for above, shall be paid or postmarked by the 30th day of the month following the month for which the contributions are due. A consolidated transmittal form as approved by the Trustees of the various Funds and provided by the Administrative Office showing the monthly total of compensable hours worked by each employee covered by this Agreement shall accompany such payment.

2. **Information and Audit**

Each Contractor shall provide the appropriate Trustees with all information necessary to carry out the purposes of the various Funds and shall permit an audit of his payroll records by an authorized representative of the Administrative Office to ascertain whether all contributions due have been paid.

3. **Authority of Trustees to Reduce Contributions**

The Trustees of each of the Trust Funds are hereby given authority to, and may at their discretion, temporarily reduce the rate or amount of contribution to any of said Trust Funds, or order a temporary discontinuance of payments into any of said Trust Funds if in their judgment an unjustified surplus is being accumulated in any of said Funds.

4. **Delinquent Contributions**

(A) When any Contractor's contributions to any of the Trust Funds provided for under this Agreement are not paid or postmarked and mailed by the last day of the month immediately following the month for which the contributions are due, such contributions are delinquent and the Contractor shall be deemed to be in violation of this Agreement and the aforementioned Trust Agreements. The Trustees on behalf of the Trust Funds are authorized to bring whatever legal action deemed necessary to recover delinquent Trust Funds contributions, liquidated damages and interest including but not limited to

the institution of any action against a Contractor, surety or co-obligor to recover monies owed by the delinquent Contractor to the Trust Funds and to the assertion, perfection and foreclosure of any lien arising from the providing of labor by employees of the delinquent Contractor. A Contractor responsible for such delinquent contribution shall pay the following to each respective Fund.

[a] The unpaid contributions.

[b] Interest on the unpaid contributions at the rate of twelve (12) percent per annum or the rate prescribed under Section 6621 of the Internal Revenue Code of 1954, whichever is greater, provided, however, that should such delinquent Trust Fund contributions be paid in a timely fashion as provided for herein, no interest shall be charged. Interest shall be computed from the first (1st) day following the month for which Trust Fund contributions are owed.

[c] An amount equal to the greater of:

(i) interest on the unpaid contribution, or

(ii) liquidated damages in the amount of twenty (20) percent of such delinquent and unpaid contribution due to each respective Fund or twenty (20) dollars, is greater, for each and every delinquent monthly contribution.

[d] All audit and collection costs, and

[e] If the delinquency is turned over to an attorney for collection, reasonable attorney's fees and costs of the action as provided for by the Employee Retirement Income Security Act, as amended.

(B) The amount specified in subsection [c](ii) above shall be due and payable to each respective Fund upon the day immediately following the date such contribution becomes delinquent and shall be in addition to the total amount of the delinquent contributions. Said amount is payable as and for liquidated damages, and not as a penalty, in that the failure of the Contractor to make the required timely payment of contributions imposes additional burden and expenses upon the Trustees in the collection thereof; in the administration of the Trust Funds, including but not limited to the processing of late contribution reports correspondence and other communication with said Contractor, and, in addition, thereto may cause a loss of benefits to employees, and loss of benefit of the use of the amounts required to be paid, all of which are difficult to accurately ascertain.

5. **Weekly Reports and Payments Of Delinquent Contractor.** Any other provision to the contrary notwithstanding, a Contractor who is responsible for delinquent contributions may be required by the Trustees of the various Funds to make and submit weekly detailed reports and payments for current contributions no later than the Friday immediately following the end of each and every week until such time as all delinquent accounts due and payable to each of the respective funds are

brought current. In the event Friday falls on any holiday on which local banks will be closed, the report and payments shall be made and submitted by Thursday of that week.

6. Any other provisions of this Agreement to the contrary notwithstanding, employees may picket or stop working for a delinquent Contractor, so long as he remains delinquent, and such stoppage shall not be a violation of this Agreement.

7. The Trustees may require a new Contractor (a Contractor who signs this Agreement after September 1, 1997), to post a bond of $1,000 or the prospective average of three (3) months' contributions or the same amount in cash-in-escrow, for each respective Fund for a period of one (1) year from the date he signed this Agreement.

8. **Project Breakdown.** A Contractor deemed delinquent by the Trust Funds will be required to provide the Trustees with information, on a monthly basis, as to the specific project on which each employee has worked the reported hours. The Contractor will be required to provide such project breakdown for a period of six (6) months following the Trust Funds' determination of delinquent status. Said obligation will not terminate until the Contractor has been deemed not delinquent for a full six months.

K. **Qualification of Trustees.** Union trustees must be union members in good standing. Contractor trustees must be current and regular employees of Contractor or former, retired employees of Contractor.

## SECTION 16. WORKING RULES

Contractor, employees, and the Union shall observe the following Working Rules:

A. **Ratio of Journeymen to Foremen/Working Foremen**

On all jobs requiring five (5) or more Journeymen and/or trainees, one (1) journeyman shall be a Foreman or Working Foreman. A Working Foreman shall not supervise more than nine (9) other Journeymen and/or trainees. There shall be no other limitation or restrictions placed on the number of men assigned to any crew or to any service. The selection of Foremen and Working Foremen shall be entirely the responsibility of the Contractor.

B. **Drinking Water**

An adequate daily supply of fresh water, cooled by ice, shall be available to employees at convenient locations on all job sites at the start of each workday, but in no event any later than one-half (½) hour after the start of the shift. When water is supplied in containers, said containers shall be clean and Contractor shall furnish paper cups or have an OSHA-approved type of drinking fountain with rim guard to prevent the possible spread of disease.

C. **Height Pay**

1. When an employee is required to work from bosun's chairs or swinging scaffolding, he shall be paid twenty-five cents ($.25) per hour over his regular rate.

2. When an employee is required to work from any scaffolding over twelve (12) feet in height, said employee shall be paid a premium of twenty-five cents ($.25) per hour. (NOTE: The 12-foot height is to be measured from the floor).

D. **Tools**

1. The Contractor shall provide on each job site a reasonably safe place where his employees may keep their tools. At the Contractor's discretion, he may provide a list of tools not to exceed a replacement value of Eight Hundred Dollars ($800), which the employee is required to have. The employee's tools shall be subject to periodic check by the Contractor and/or his authorized representative.

2. If an individual employee's working tools are lost by reason of fire or theft involving forcible entry while in the care of the Contractor, the Contractor shall reimburse the employee for such loss up to a maximum of Eight Hundred Dollars ($800).

3. With the consent of the Contractor the individual employee may provide himself with any additional tools and equipment for his own personal convenience. In the event that said additional tools are lost by fire, or theft by forcible entry while in the care of the Contractor, the Contractor shall reimburse the employee the full replacement value for said tools; provided, however, that the employee had received prior consent from the Contractor to use said additional tools.

4. If an employee has lost his working tools by reason of fire or theft by forcible entry as referenced to above, said employee shall not suffer any loss time or pay because of said loss, and the Contractor shall allow such employee a reasonable amount of paid time, during working hours, to obtain replacement tools.

   DRYWALL TOOL LIST: SEE EXHIBIT "G"
   LATHERS TOOL LIST: SEE EXHIBIT "G-1"

5. All power tools and their accessories, as required by the Contractor shall be supplied by the Contractor.

6. All tools and equipment furnished by the Contractor shall be charged to the employee when issued to him and full credit will be given the employee upon return of the tools and/or equipment. If the employee does not return the issued tools and/or equipment, he shall reimburse the Contractor the replacement costs of the tools and/or equipment.

7. There shall be no restrictions on the full use of tools or equipment and no rule, custom, or practice shall be permitted that limits production or increases the time or number of employees required to do any work.

E. **Safety and Protective Devices**

1. Except for construction hard hats, which each employee shall secure on his own as part of the tools of his trade, the Contractor shall furnish all other safety and protective equipment as may be required for all hazardous material by applicable State or Federal safety regulations for the work being performed.

2. Where a special type or color of hard hat, safety goggles, or ear plugs are required either by State or Federal safety regulations, or by the Contractor then said special type or color of hard hat, safety goggles or ear plugs, shall be supplied by the Contractor.

3. The Union agrees on behalf of itself and each employee covered hereby that employees shall use the provided health and safety equipment.

4. Employees shall be responsible for the proper care, use and maintenance of such equipment as is issued or assigned to them, and they shall return same to the Contractor upon completion of its use.

F. **Personal Automobile**

No employee shall be required to use his personal automobile to transport the Contractor's materials or equipment, except for tools assigned him by the Contractor.

G. **Clean Up**

Employees shall be allowed fifteen (15) minutes time, at the regular straight time pay, to pick up tools and clean up before quitting for the day.

H. **Listing Materials**

No employee shall list material from plans, or in any other manner before or after regular working hours without the specific authorization by the Contractor. In such event, he shall receive the overtime rate of pay.

I. **Lending Employees Prohibited**

There shall be no loaning of employees as long as there are qualified workmen on the bench available for work.

J. **Nonresident Contractor**

If a Contractor, being from outside the State of Hawaii, undertakes any work within the trade jurisdiction described above within the State of Hawaii, such Contractor shall not bring in more than one (1) non-resident foreman or superintendent.

K. **Contractor Working With Tools**

No Contractor may work with tools. As used in this paragraph, Contractor means any person owning at least ten percent (10%) of the business as an individual or partner or who owns or subscribes directly to at least ten percent (10%) of the outstanding shares of stock of a corporation.

L. **Work Under Union Agreement**

A Contractor shall not sublet, assign or transfer work covered by this Agreement to any person or firm not a party to this Agreement.

M. **No Piece Work, Contract Work, or Moonlighting**

1. No Piece Work or Contract Work

   (a) No employee shall perform work covered by this Agreement on a "piece work," or contract basis, nor shall any employee perform work within the jurisdiction of this Agreement, except as an employee of the Contractor.

12

(b) No Contractor shall ... ...ny employee to perform work covered by this Agreement on a "piece work," or contract basis, nor shall any Contractor allow any employee to perform work within the jurisdiction of this Agreement, except as an employee covered by this Agreement.

2. **No Moonlighting**

(a) No employee covered by this Agreement shall do any moonlighting of work covered by this Agreement.

(b) No Contractor shall allow any moonlighting of work to be done for him.

(c) For the purpose of this Section, "moonlighting," shall be defined as an employee performing work, with or without compensation, in the drywall, acoustical, or lathing trade, after hours, on weekends or holidays, or during periods of vacation for someone other than his Contractor, without the specific knowledge and approval of his Contractor and the Union.

3. **Violation Of This Section**

(a) In the event it is alleged that an employee covered by this Agreement, or that a Contractor covered by this Agreement, has violated paragraphs 1. and/or 2. above, said allegations shall be processed to the Joint Industry Committee. If the Joint Industry Committee determines that a violation has, in fact, occurred, the violator shall be fined as follows:

First Offense ................................ Fine of $ 500
Second Offense ............................ Fine of $1,000
Third Offense
   And Thereafter ........................ Fine of $1,500

(b) In addition to the above fine, an employee violator may, under the provisions of Section 9 (Discipline or Discharge) of this Agreement, also be subject to disciplinary action including discharge by the Contractor for whom he is working.

N. **Notification Of Overtime Work**

The Contractor shall notify the Union whenever overtime work is to be performed or whenever work is to be performed on a Saturday, Sunday, or Holiday. This notification shall be given no later than 4:00 p.m. on the day on which the overtime work is required and shall include the job location and the approximate hours to be worked. In the case of Saturday, Sunday, or Holiday work, such notification shall be given no later than 4:00 p.m. on the working day immediately prior to the scheduled Saturday, Sunday or Holiday work.

**SECTION 17. TRANSPORTATION AND PARKING EXPENSES (ISLAND OF OAHU ONLY)**

A. **Transportation**

1. The Contractor will provide, as a convenience to employees, suitable transportation which employees may accept or refuse at designated pickup spots, enroute from the Contractor's permanent yard to job site in sufficient time to permit said transportation to arrive at the job site in time for the employees to start work at the normal starting time.

2. If the Contractor does not provide transportation, pursuant to the provisions of Paragraph 1, above, the employee or employees who drive their own cars to the job site will be entitled to a mileage allowance of thirty-one-and-a-half cents (31.5¢) per mile for miles traveled to and from the job site, computed from the employee's home or from the Contractor's permanent yard, whichever distance is shorter.

3. If during the term of this Agreement, the Internal Revenue Service (I.R.S.) increases the amount of mileage allowance that it allows (presently thirty-one-and-a-half cents [31.5¢] per mile,) the thirty-one-and-a-half cents (31.5¢) per mile allowance, as provided in Paragraph 2, above, and in Section 18C, Paragraph 2, shall be increased by the amount of said increase, effective as of the first Monday of the second month following the date on which the I.R.S.'s announcement of the increase is published in the Federal Register.

B. **Bad Road Transportation**

1. At or within a job or project, where the work is to be performed is unsuitable and if no parking facilities are provided within a five (5) minute walk to said work area, the Contractor will transport the employee from the parking area to and from where the work is being performed.

2. Where a special and unusual condition exists which makes it difficult for the employee to arrive at the job site, mutually satisfactory arrangements for transportation shall be made between the Contractor, the Association, and the Union in order that the employee may be at the job site ready to begin work at the normal starting time.

C. **Parking Expenses**

Where free parking is not available within 2,000 feet of a job site, the Contractor shall reimburse employees at the lowest parking rate available within said 2,000 foot area, provided that the employee presents a signed and dated receipt for each parking expenditure. The Contractor may, however, at his option, furnish transportation from a designated parking area where parking is free to and from the job site, rather than reimburse the employees for such parking expenditures.

**SECTION 18. SUBSISTENCE AND TRAVEL**

A. **Travel and Subsistence**

1. When an employee is required by the Contractor to leave the Island on which he resides to report to work on a Neighbor Island project, the Contractor will provide transportation to and from said Island.

2. While traveling to and from said island on a regular workday, the employee will receive his regular straight time rate of pay not to exceed eight (8) hours in any one twenty-four (24) hour period, including time worked. If work is not provided for the employee at the time of his arrival at his desti-

nation he shall, nevertheless, be paid eight (8) straight time hours.

3. If required to travel to and from said Island on a non-workday, the employee shall receive his regular straight time rate of pay only for the time spent in actual travel from port to port, but not to exceed eight (8) straight time hours in any one twenty-four (24) hour period.

4. Transportation of any personal baggage (exclusive of tools required by the Contractor) in excess of the weight and size that's included in the normal fare, shall be paid for by the employee, unless he receives express permission from the Contractor to take excess baggage.

5. If the employee is required to remain on the Island, the Contractor shall either:

   (a) provide meals and lodging of good quality (no more than two [2] persons per room*) OR

   (b) provide lodging of good quality (no more than two [2] persons per room*) plus pay a per diem meal allowance in the following amount:

       Effective 08-26-97    $26.00

   (c) OR, pay a per diem allowance in the following amount:

       Effective 08-26-97    $47.50 per day

   *NOTE: The term "room" as used in paragraphs 5(a) and 5(b), above shall not include the living room, but shall include an enclosed den which may be used by one employee, provided it affords the same degree of privacy as a bedroom.

6. Except as provided in paragraph 7, immediately below, the employee shall have the option of requesting the Contractor to provide another of the above choices other than that as initially offered by the Contractor. The employee shall designate his exercise of this option, in writing, and in sufficient time for the Contractor to make necessary arrangements. Once exercised, this option shall apply for the duration of the project unless changed with the consent of the Contractor.

7. Where a camp set-up, which meets County and State Department of Health standards is being made available, the employee must utilize those facilities. If he does not, he shall not be entitled to any subsistence or per diem allowance.

8. Employees shall be entitled to weekend round trip transportation at the Contractor's expense from the Neighbor Island to his home Island on the fourth (4th) weekend of his stay on said Neighbor Island and for every fourth (4th) weekend, thereafter, until completion of the project. (By mutual agreement between the Contractor and the employee, another weekend may be substituted as to take advantage of a long weekend or to otherwise accommodate special requests.) On such weekend trips home, the employee shall not receive the per diem subsistence allowance for Saturdays, Sundays, or Holidays.

9. Meals and lodging or subsistence allowance, as the case may be, shall be provided for seven (7) days a week, provided, however, that an employee who absents himself from work without the approval of the Contractor shall pay the applicable per diem subsistence allowance as specified above for the cost of his meals and lodgings, or shall have the applicable per diem subsistence allowance deducted from his subsistence pay, as the case may be, for each day of absence.

10. Meals and lodging or subsistence allowance, as the case may be, shall automatically cease in the event the employee refuses to work or is suspended for cause or discharged or quits prior to the completion of the work project. Said employee shall pay his own return transportation and shall not be paid for return travel time.

11. Employee shall be reimbursed for travel expenses as approved by the Contractor which are incidental to the trip.

12. This subsection shall not apply to bonafide residents of the Island on which the work is being performed.

B. Application of Subsistence To Bonafide Residents Of Neighbor Islands Who Are Required By The Contractor To Live Away From Home On The Same Island

1. When an employee who is a bonafide resident of any Neighbor Island is required by the Contractor to live away from home, elsewhere on the same Island, the Contractor shall either:

   (a) provide meals and lodging of good quality (no more than two [2] persons per room*), OR

   (b) provide lodging of good quality (no more than two [2] persons per room*), PLUS pay a per diem meal allowance in the same amount as specified in paragraph 5(b), above OR

   (c) pay a per diem allowance in the same amount as specified in paragraph 5(c) above.

   *NOTE: The term "room," as used in paragraphs 1(a) and 1(b), above shall not include the living room, but shall include an enclosed den which may be used by one employee, provided it affords the same degree of privacy as a bedroom.

2. Except as provided in paragraph 3, immediately below, the employee shall have the option of requesting the Contractor to provide another of the above choices other than that as initially offered by the Contractor. The employee shall designate his exercise of this option, in writing, and in sufficient time for the Contractor to make necessary arrangements. Once exercised, this option shall apply for the duration of the project, unless changed with the consent of the Contractor.

3. Where a camp set-up which meets County and State Department of Health standards is being made available, the employee must utilize those facilities. If he does not, he shall not be entitled to any subsistence allowance or per diem allowance.

4. Such meals and lodging or applicable per diem allowance, as the case may be, shall be provided for five (5) days a week, provided, however, that where said employee is required by the Contractor to work a six (6) or seven (7) day workweek, said employee shall receive meals and lodging or the applicable per diem allowance, as the case may be, for said six (6) or seven (7) days.

5. If the employee requires transportation in returning to and from home for the weekend, the Contractor will provide or arrange for said transportation.

6. An employee who absents himself from work without the approval of the Contractor shall pay or shall have the applicable per diem allowance deducted from his per diem pay, as the case may be, for each day of absence.

7. Such meals and lodging or the applicable per diem allowance, as the case may be, shall automatically cease in the event the employee quits, refuses to work, or is suspended or discharged for cause prior to the completion of the work project.

C. **Transportation (Applicable to the Islands of Hawaii, Maui and Kauai)**

When an employee is required to report to a job or project which is located more than ten (10) miles from the reference points listed below, the Contractor shall either provide safe (as required by law), and suitable transportation which employees may accept or refuse at pickup spots which will be designated enroute from the Contractor's permanent yard (from the Union's office if there is no permanent yard) to the job site in sufficient time to permit said transportation to arrive at the site for employees to start work at the normal starting time or, if transportation is not provided, the Contractor shall pay a round trip mileage allowance of thirty-one-and-a-half cents (31.5¢) per mile for each mile the job or project is located outside the 10-mile radius from the reference point listed below. The reference point used for mileage calculation will be that point closest to the job or the project site.

| Island | Reference Point |
|--------|-----------------|
| Hawaii | Hilo Post Office |
| Kona | Kailua-Kona Post Office |
| Maui | Kahului Post Office |
| Kauai | Lihue Post Office |

## SECTION 19.  ACCESS TO JOB

The Union's business agent, or his assistant shall have access to the Contractor's premises and job projects to investigate grievances and to ascertain whether this Agreement is being observed.  Such access shall be exercised reasonably.

## SECTION 20.  UNION STEWARD

A. The Union shall have the right to elect or appoint company Stewards for each Contractor covered by this Agreement. The Union shall give written notice to the Contractor of the name of said Steward.

B. Said Steward shall be given reasonable time during regular working hours to contact employee covered by this Agreement who are employed on the project on which the Steward is working;  provided, however, that time so spent shall be exercised reasonably.

C. Said Steward shall also be allowed to attend and participate in grievance meetings held on the project on which he is working.

D. It is specifically understood that said Steward shall not under any circumstances leave the project to which he has been assigned in order to perform his Steward duties.

E. The Contractor shall not discharge or discriminate against said Steward or any other employee for presenting a grievance or giving evidence with respect to an alleged violation of this Agreement.  When the Steward or any other employee alleges a violation of this Agreement, the complaint will be processed as provided under Section 24 (Grievance Procedure).

F. Whenever overtime work is to be worked on the project on which the Steward is working, said Steward shall be offered the first opportunity to perform said work provided he is qualified and competent to perform the work required.

G. In the event of layoffs due to lack of work, the Steward shall be the last employee, within his classification (journeyman, working foreman, foreman), to be laid off.  In no event shall a Steward be laid off due to lack of work, unless he has not been employed on the project from which he is laid off for at least thirty (30) working days, and provided, further, that he is qualified and competent to perform the work available.

H. In the event the Union Steward is to be laid off for lack of work, the Contractor shall notify the Union at least three (3) days before the layoff is to be made.

## SECTION 21.  APPRENTICE

A. There shall be a Joint Apprenticeship Committee of three (3) persons appointed by the Union and three (3) persons appointed by the Contractors. The Committee may act for or on behalf of the Contractor and the Union. The parties will comply with any recommendations made by the Committee. The Committee shall supervise all apprenticeship matters in accordance with this Agreement. Every Contractor shall subscribe to the rules and regulations of the Committee. Every employee below the rank of journeyman shall be an indentured apprentice under the direction of the Committee. Every apprentice  shall be registered with the Committee before being put to work.

B. After an apprentice serves a satisfactory probationary period of three (3) months, a Contractor shall employ the apprentice for the full term of his apprenticeship, if possible, or transfer such apprentice to another Contractor as directed by the Committee.

C. Whenever possible, a Contractor will give the Committee forty-eight (48) hours notice before laying off an apprentice. If an apprentice is discharged for cause, no notice is required.

D. If there is a dispute involving apprenticeship matters which cannot be settled by the Committee, such dispute shall be referred to the Joint Apprenticeship Committee for settlement.