# EXHIBIT "1"

# PART 2 OF 2

E. The ratio of apprentices to journeymen shall be established by the Joint Apprenticeship Committee.

## SECTION 22. HIRING AND REFERRAL PROCEDURE

A. **Notification**

1. The Union shall be promptly notified whenever an employee covered by this Agreement is hired. This notification may be accomplished either by return of a Contractor signed copy of the Union's referral slip or by submission of a Confirmation of Hiring Form.

2. The Contractor shall also notify the Union, weekly, of the names of those employees who have quit, been laid off or been terminated during the previous workweek.

B. **Neighbor Island Hiring & Referral Offices**

When a Contractor based on one Neighbor Island secures work on another Neighbor Island, said Contractor shall contact the Union's hiring and referral office which services that Island to determine whether Journeymen and/or apprentices are available, who are qualified to do the work required. The Contractor reserves the right to accept or reject any of said employees who may be referred to him.

C. **Definitions (As used herein:)**

1. "Normal construction labor market," means the geographical area of the State of Hawaii.

2. "Apprentice," means a person who is registered and indentured with the Joint Apprenticeship Committee.

3. "County," means the counties of Hawaii, Maui, Kauai, or the City and County of Honolulu.

D. **Exclusive Referral**

The Union shall be the sole and exclusive source of referral of applicants for employment.

E. **Rejection of Applicant**

A Contractor may reject any applicant for employment.

F. **Nondiscrimination**

The Union shall select and refer applicants for employment without discrimination against such applicants by reason of membership or non-membership in the Union, or because of race, color, religion, sex, national origin, age, physical handicap, or for being a disabled veteran or a veteran of the Vietnam Era.

G. **Register of Applicants**

The Union shall maintain a register of applicants for employment.

H. **Apprentices**

Apprentices shall register with the Union and shall be referred to employment in order of their registration, provided that no apprentice shall be referred to employment unless he has first registered with the Joint Apprenticeship Committee.

I. **Out-of-Work Register**

Whenever a Contractor needs employees, he shall make a request of the Union for same, and the Union shall refer applicants to the Contractor according to the order in which the applicants register on the out-of-work register.

Any applicant who rejects two (2) successive offers of referral shall be placed at the bottom of the out-of-work register.

J. **Rejection By Contractor**

The Contractor may reject any applicant referred to him. When the Contractor rejects, by telephone, any applicant for employment on the register, he must do so immediately in the order that applicants are, or were referred to him from the out-of-work register. The Contractor shall notify the Union's referral agent in writing, by card, or letter within forty-eight (48) hours of the name of any applicant rejected and the reason for his rejection.

K. **Exhausted Out-of-Work Register**

If the out-of-work register is exhausted and the Union is not able to refer applicants to the Contractor, within forty eight (48) hours from the time of receiving a Contractor's request, Saturdays, Sundays, and holidays excepted, the Contractor may secure employees without using the referral procedure, but such employees, if hired, shall have the status of "temporary employee." The Contractor shall notify the Union promptly of the names and social security numbers of such temporary employees. If the Contractor recruits an employee in accordance with the foregoing, such employee shall register with the Union.

L. **Posting**

A copy of the referral procedure set forth, herein, shall be posted on the bulletin board in the office of the Union and in the office of each Contractor.

## SECTION 23. JOINT INDUSTRY COMMITTEE

A. **General**

There shall be a Joint Industry Committee of three (3) persons appointed by the Union and three (3) persons appointed by the Contractors. Both sides may select alternates when regular members are absent. Persons appointed by the Union must be union members in good standing. Persons appointed by the Contractors must be regular and current employees of Contractors.

B. **Scope and Authority**

The Committee may determine questions relating to the applications and interpretation of this Agreement.

C. **Powers**

The Committee may suspend any Contractor or employee under this Agreement and impose fines or other penalties on any Contractor or employee under this Agreement for violation of any provision, hereof, unless the violation was caused by reasons beyond the control of the person found to be in violation.

D. **Establish Own Rules**

The Committee shall determine its rules of procedure and set the time and place of Committee meetings. The Committee may expend funds entrusted to it to carry out the business of the Committee.

E. **Quorum**

Two (2) members representing each party shall be a quorum.

F. **Voting: Binding Decisions**

The unit rule shall govern. A majority decision of the Committee shall be final and binding upon parties of this Agreement.

G. **Funds**

Any money collected by the Committee by reason of imposition of fines, assessments or other penalties shall be deposited with a bank in the name of the Committee.

H. **Rights of Committee**

The Committee may summon, question, and examine any party to this Agreement, or their representative or agents, in connection with any question or matter over which the Committee may act. The Committee may have the books and accounts of any party signatory to this Agreement examined by an independent Certified Public Accountant as to payroll records, payments made to employees covered by this Agreement, and paying of fringe benefits. The expenses for such auditing shall be paid by the Committee.

I. **Limitation of Liability**

No member of the Committee shall be liable to anyone, including parties, Contractors, or employees covered by this Agreement, as a result of decisions or acts made in the performance of his duty under this Agreement.

J. **Outsiders Barred.** No outsiders or third parties, including but not limited to non-signatory entities and other unions, shall be allowed to participate in the Joint Industry Committee hearing.

## SECTION 24. GRIEVANCE PROCEDURE

The following grievance procedure will be followed to settle any dispute between the Contractor and the Union:

**Step 1.** Within sixty (60) days of the date of the grievance, the Steward or Business Agent and the Contractor will try to settle the grievance.

If the Steward or Business Agent and the Contractor are unable to settle the grievance, said grievance will be submitted, in writing, within ten (10) days, thereafter, to the Joint Industry Committee.

Any other provisions to the contrary, notwithstanding, the Steward or the Business Agent may submit the grievance directly to the Joint Industry Committee.

**Step 2.** If the Joint Industry Committee is unable to settle the grievance within fifteen (15) days after receiving the grievance, the grievance will be submitted within ten (10) days, thereafter, to arbitration as provided, hereinafter.

Pertinent information in possession of the Contractor which is needed by the Union to investigate and process a grievance shall be provided to the Union within three (3) working days of the request for such information. This section in no way limits or waives the Union's federal statutory rights to request and receive at any time information necessary for the administration of the Agreement.

## SECTION 25. ARBITRATION

There shall be a Board of Arbitration consisting of three (3) persons, one (1) selected by the Contractors, one (1) selected by the Union, and a third member (hereinafter "independent arbitrator") selected jointly by the two selected representatives. If the two selected representatives cannot agree upon a third arbitrator, he shall be selected by the Chief Justice of the Supreme Court of Hawaii. The decision of the Board of Arbitration shall be limited to matters relating to the Agreement. The Board of Arbitration shall not amend the Agreement. The decision of the Board of Arbitration shall be final and binding upon the parties and shall be in writing, and signed by each member of the Board. A copy of the decision shall be given to each party. All fees and expenses of the independent arbitrator shall be borne equally by the Union and the Contractor involved. Each party shall bear the expenses for the presentation of its own case. No outsiders or third parties, including but not limited to non- signatory entities and other unions, shall be allowed to participate in the Arbitration.

## SECTION 26. JURISDICTIONAL DISPUTES

A. The parties, hereto, agree that there shall be no lockout by the Contractor, nor any strike, stoppage of work, or slowdown on the part of the Union or its representatives or on the part of any employee covered by this Agreement over jurisdictional disputes.

B. In the event of an unresolved dispute involving any union, said dispute shall be referred to the procedures as outlined in Section 24 of the Master Agreement Covering Drywall & Acoustical Workers and Lathers in the State of Hawaii.

Subcontractors. If work involves bargaining unit work, it must be assigned to a Contractor signatory with this Union.

## SECTION 27. GENERAL SAVINGS CLAUSE

It is not the intent of either party, hereto, to violate any laws, rulings, or regulations of any Governmental authority or agency having jurisdiction of the subject matter of this Agreement, and the parties hereto agree that in the event any provision of this Agreement are finally held or determined to be illegal or void as being in contravention of any such laws, rulings, or regulations; nevertheless, the remainder of the Agreement shall remain in full force and effect, unless the parts so found to be void are wholly inseparable from the remaining portions of this Agreement. The parties agree that if and when any provisions of this Agreement are finally held or determined to be illegal or void, they will then promptly enter into negotiations concerning the substance, thereof, it being understood that the provisions of Section 8 (No Strike Or Lockout) shall continue to remain in full force and effect.

## SECTION 28.  CONTRACTOR REQUIREMENTS

A. No Contractor shall be a party to an Agreement with the Union, unless he maintains a legitimate place of business, is financially able to meet payroll requirements every week, complies with the State of Hawaii Workers' Compensation Law, Hawaii Employment Security Law, Social Security Act, and all other State and Federal laws, enacted to protect or benefit the employee, and employs regularly at least one (1) journeyman other than himself, on a full-time basis.

B. A signatory contractor is a firm, corporation, or individual whose majority of man hours worked is in the Drywall, Acoustical, or Lathing industry.

C. Successors and Double Breasting Clause.

No selling or conveying or transferring without securing agreement that successor complies with terms of Agreement.

D. Single employers, alter egos, and other entities created or interrelated with a signatory contractor with the intent or effect of evading or avoiding this Agreement are prohibited.

E. Substance Abuse Policy

Types of testing allowed:

1. For Cause
2. Pre-employment (newly hired or indentured)
3. Periodic (if have pre-employment)
4. Random (if have pre-employment)

## SECTION 29.  MODIFICATION OF AGREEMENT

This Agreement shall not be modified except by written document signed by the parties, hereto.

## SECTION 30.  REPRESENTATIONS

This document contains the entire Agreement of the parties and neither party has made representations to the other which are not contained, herein.

IN WITNESS, WHEREOF, the parties hereto have caused these presents to be executed on this _____ day of _____ , 19 _____ .

UNITED BROTHERHOOD OF CARPENTERS
& JOINERS OF AMERICA, LOCAL 745, AFL-CIO

By: _____
Walter H. Kupau
Financial Secretary
Business Representative

GYPSUM DRYWALL CONTRACTORS OF HAWAII

By: _____
Ronald Prescott
President

EXHIBIT "A"
## AGREEMENT COVERING DRYWALL & ACOUSTICAL WORKERS AND LATHERS IN THE STATE OF HAWAII

### SCHEDULED WAGE AND BENEFIT INCREASES

| | Present | Eff 9/1/97 | Eff 3/2/98 | Eff 8/31/98 | Eff 3/1/99 | Eff 8/30/99 | Eff 2/28/00 | Eff 9/4/00 | Eff 2/26/01 | Eff 9/3/01 | Eff 3/4/02 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| WAGE RATE JOURNEYMAN | $26.65 | +.25 26.90 | +.25 27.15 | +.25 27.40 | +.25 27.65 | +.35 28.00 | +.35 28.35 | +.50 28.85 | +.50 29.35 | +.80 30.15 | +1.00 31.15 |
| HEALTH AND WELFARE | 3.32 | +.15 3.47 | +.15 3.62 | +.15 3.77 | +.15 3.92 | +.15 4.07 | +.15 4.22 | +.05 4.27 | +.05 4.32 | 4.32 | 4.32 |
| FINANCIAL SECURITY FUND | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | +.25 5.25 | +.25 5.50 | 5.50 | 5.50 |
| VACATION AND HOLIDAY FUND | 4.80 | 4.80 | 4.80 | 4.80 | +.20 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 |
| APPRENTICESHIP AND TRAINING | .30 | .30 | .30 | +.10 .40 | .40 | +.05 .45 | +.05 .50 | .50 | .50 | .50 | +.10 .60 |
| MARKET RECOVERY PROGRAM | .10 | .10 | .10 | +.10 .20 | .20 | +.05 .25 | +.05 .30 | .30 | .30 | .30 | +.10 .40 |
| *TOTAL WAGES AND FRINGES* | 40.17 | +.40 40.57 | +.40 40.97 | +.60 41.57 | +.60 42.17 | +.60 42.77 | +.60 43.37 | +.80 44.17 | +.80 44.97 | +.80 45.77 | +1.20 46.97 |

| TOTAL PER YEAR | | .80 | | 1.20 | | 1.20 | | 1.60 | | 2.00 | |
|---|---|---|---|---|---|---|---|---|---|---|---|

| Hawaii Drywall Industry Improvement Program | $.15 | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|

*Non-Association Contractors See Section 5.

DRYWALL APPRENTICES:

| Step 1 | 1 to 1,000 hours | 40% of Journeyman's wage rate |
|---|---|---|
| Step 2 | 1,001 to 2,000 hours | 45% of Journeyman's wage rate |
| Step 3 | 2,001 to 3,000 hours | 50% of Journeyman's wage rate |
| Step 4 | 3,001 to 4,000 hours | 60% of Journeyman's wage rate |
| Step 5 | 4,001 to 5,000 hours | 70% of Journeyman's wage rate |
| Step 6 | 5,001 to 6,000 hours | 80% of Journeyman's wage rate |
| Step 7 | 6,001 to 7,000 hours | 90% of Journeyman's wage rate |
| Step 8 | 7,001 to 8,000 hours | 95% of Journeyman's wage rate |

**Trust Fund Contributions**

For the first 1,000 hours worked by said "new" Apprentice, the Contractor shall ONLY be required to make the regular hourly contributions to the Hawaii Carpenters Health & Welfare Trust Fund and to the Hawaii Carpenters Vacation & Holiday Fund. No other Trust Fund or other contributions shall be effective to or shall be made on behalf of said "new" Apprentices until he or she has completed 1,000 work hours as an Apprentice.

LATHER APPRENTICES:

| Step | Hours | Rate |
|---|---|---|
| Step 1 | 1 to 1,000 hours | 40% of Journeyman's wage rate |
| Step 2 | 1,001 to 2,000 hours | 45% of Journeyman's wage rate |
| Step 3 | 2,001 to 3,000 hours | 50% of Journeyman's wage rate |
| Step 4 | 3,001 to 4,000 hours | 60% of Journeyman's wage rate |
| Step 5 | 4,001 to 5,000 hours | 70% of Journeyman's wage rate |
| Step 6 | 5,001 to 6,000 hours | 80% of Journeyman's wage rate |
| Step 7 | 6,001 to 7,000 hours | 90% of Journeyman's wage rate |
| Step 8 | 7,001 to 8,000 hours | 95% of Journeyman's wage rate |

EXCEPT for the regular contributions to the Carpenters' Health & Welfare Trust Fund, no other Trust Fund contributions shall be effective to or shall be made for or on behalf of an Apprentice for the first ninety (90) calendar days of his employment in the industry.

EXHIBIT "B"

## ASSIGNMENT OF WAGES TO COVER UNION INITIATION FEES AND DUES

TO _____

Employer

I assign to United Brotherhood of Carpenters and Joiners of America, Local 745, AFL-CIO, out of my wages for Union initiation fee not more than $_____ and not more than $_____ a month for dues, as certified to you in writing by the Union, and I authorize the payment to the Union each month of the amount so deducted.

This assignment shall be irrevocable until one year from the date below, or until the termination date of the applicable collective bargaining agreement (within the meaning of the Labor-Management Relation Act, 1947), whichever occurs sooner, and shall be automatically renewed and shall be irrevocable for successive periods of one year each or for the period of each succeeding applicable collective bargaining agreement, whichever shall be shorter, unless at least ten days and not more than twenty days before the expiration of each period of one year or of each applicable collective bargaining agreement, whichever occurs sooner, I give written notice to the Employer of my desire to revoke this assignment, or unless the same shall be automatically canceled when my employment ends or when I cease to be employed in a capacity represented by the bargaining unit.

There shall be no obligation on the part of the Employer to make any deduction beyond the original term of the collective bargaining agreement existing at the date of this assignment, unless the agreement is extended or a new agreement has been negotiated containing an authorization for Union deductions in the agreement existing at the date of this assignment.

Date _____       _____

Employee's Signature

Receipt of the foregoing assignment is acknowledged by:

_____

Employer

Date _____   By _____

EXHIBIT "B-1"
PAYROLL DEDUCTION

NAME _____

SOCIAL SECURITY NO. _____


TO ALL SIGNATORY EMPLOYERS:

I assign to the Carpenters Union, Local 745, out of my wages, any amounts that may be determined from time to time by the Union, and certified to you in writing by the Union, and I authorize the payment to the Union each month of the amount so deducted.


Date _____    _____
                                          Employee's Signature

EXHIBIT "C"

ASSIGNMENT OF WAGES FOR CREDIT UNION PAYMENTS

Name _____    Acct. No. _____

Payroll No. _____    Soc. Sec. No. _____

_____ CARPENTERS' LOCAL 745 _____ Credit Union

TO:   PAYMASTER _____

I hereby authorize you to deduct the following amount from my pay:

[   ] each payroll period,   OR   [   ] _____

until further notice from me, and deposit same currently in the above named Credit Union.

Start  [   ]      Change  [   ]         $ _____

Date _____    Effective Date: _____

Signature of Employee: _____

23

EXHIBIT "D"
CONFIRMATION OF HIRING SLIP

To: _____
(Union)

_____
(Address)

This is to confirm that _____
(Name of Employee)

was hired by me on _____ as a _____
(Date Hired)                         (Classification)

at a wage rate of _____ per hour. He is to report for work at

_____ on _____ at _____ A.M.
(Job Location or Project)                (Date)                (Starting Time)

_____
Contractor

_____
Signature of Contractor's Representative

_____
Date

ABOVE INFORMATION CONFIRMED BY:

_____
Signature of Authorized Union Representative

Date: _____

EXHIBIT "E"

## CERTIFICATION OF RECEIPT AND ACCEPTANCE OF THE  MASTER AGREEMENT COVERING DRYWALL & ACOUSTICAL WORKERS AND LATHERS IN THE STATE OF HAWAII, AND DECLARATION OF TRUST AGREEMENTS APPURTENANT THERETO

THE UNDERSIGNED CONTRACTOR hereby acknowledges receipt of the following documents:

1. Master Drywall and Lather Agreement executed on the 1ST day of September, 1997, and effective to and including August 31, 2002.

2. Hawaii Drywall and Lather Industry Training Declaration of Trust Agreement executed on the 28th day of December, 1977, as amended;

3. Hawaii Carpenters Health & Welfare Fund Declaration of Trust Agreement executed on the 28th day of December, 1977, as amended;

4. Hawaii Carpenters Vacation & Holiday Fund Declaration of Trust Agreement executed on the 28th day of December, 1977, as amended;

5. Hawaii Carpenters Financial Security Fund Declaration of Trust Agreement as executed December 31, 1987;

6. Hawaii Carpenters Market Recovery Program Declaration of Trust Agreement as executed December 31, 1987;

and hereby certifies acceptance of all terms and conditions as contained in said documents, with all terms and conditions to be effective as of _____, 19_____.

From and after the date, hereinabove set forth, the undersigned Contractor agrees to abide by all the terms and conditions in said Agreement and any amendments, modifications, changes, extensions, and renewals, thereto.  Any such amendments, modifications, changes, extensions, and renewals made to  the Agreements hereafter shall become effective and shall remain in full force and effect only upon execution by the Union and the Association of an appropriate written document, a copy of which (or other notice of such changes) shall be mailed to the Contractor's last-known address.

UNITED BROTHERHOOD OF CARPENTERS
& JOINERS OF AMERICA, LOCAL 745,
AFL-CIO


_____          _____
                 Financial Secretary                                                   Contractor


_____          _____
                                                                                Authorized Signature


                                                                       _____
                                                                                 Date of Signature

                                                              STREET ADDRESS OF ABOVE CONTRACTOR:

                                                              _____

                                                              _____
                                                                                                      Zip Code

                                                              _____   _____
                                                              Phone No.                          License No.

EXHIBIT "F"
## SUPPLEMENTARY APPRENTICES EMPLOYMENT PROCEDURES

A. When a Joint Apprenticeship Committee has determined that its approved process of selection will not meet the goals and timetables prescribed in 29 CFR Part 30, re FR, 20760 ff, May 12, 1978, or the requirement for additional women of the contractors it serves so they can meet their goals and timetables prescribed in 41 CFR Chapter 60, Part 60-4, 43 FR 1488 ff, April 7, 1978, then said Joint Apprenticeship Committee may supplement that selection process in the following manner:

   1. Maintain an open and continuous application period for female applications.

   2. Promptly process such applications in accordance with the procedures and entrance qualification requirements of the regular apprenticeship program.

   3. Place applicants determined to be qualified into any apprenticeship openings then available.

   4. Refer qualified female applicants unplaced in the regular apprenticeship program to participating employees for employment as supplementary apprentices pending their enrollment by the Joint Apprenticeship Committee in the regular apprenticeship programs. A Contractor may employ such qualified supplementary apprentices not in excess of the number required to achieve the goals and timetables requirements of 41 CFR 60-4.

   5. Time spent in the supplementary program must count the same as time in the regular apprenticeship program for attaining craft status.

   6. Women who transfer from the supplementary program will have all time spent in the supplementary program count towards attaining craft status on the same basis as if the time had been spent in the regular program.

   7. Women who never transfer from the supplementary program will attain craft status upon completion of the same time period as required under the regular program, and

   8. Apprentice wages are increased based upon total time spent, regardless of whether it is in the regular or supplementary program or a combination of both.

B. Supplementary apprentices shall be paid no less than a first term apprentice in the regular program and any earned incremental increase as if enrolled in the regular program. Supplementary apprentices shall be under the general supervision and instruction of a competent craft worker.

C. Efforts should be made to recruit supplementary apprentices from work orientation, preparatory training, and/or CETA programs. The Joint Apprenticeship Committee shall continuously monitor and evaluate the supplementary apprentices during their employment and shall afford them priority consideration for available apprentice openings in the regular program consistent with the Joint Apprenticeship Committee's responsibility for maintaining a proper program. Such openings shall be offered in the chronological order in which first employed as a supplementary apprentice. Supplementary apprentices will be registered by the registration agency in the same manner apprentices in the regular program are registered and will be certified for Davis-Bacon purposes as bonafide registered apprentices.

EXHIBIT "G"
### DRYWALL & ACOUSTICAL WORKERS IN THE STATE OF HAWAII
TOOL LIST

1. Magnetic Punch
2. Tin Snip
3. Nail Pouch and Tool Pouch
4. Drywall Hammer or Ax
5. Tape Rule and Pencil
6. Utility Knife and Blades
7. Level 4' or 6'
8. Screwdriver
9. Kicker
10. Circle Cutter
11. T Square
12. Drywall Saw
13. 100 Foot Chalkline
14. Safety Goggles
15. Ear Plugs or Ear Protection Device
16. Plumb Bob (minimum weight of 24 oz.)
17. Hard Hat
18. OSHA-approved Footwear

EXHIBIT "G-1"
## LATHERS IN THE STATE OF HAWAII
### TOOL LIST

1. Chalk and Plumb Line
2. Chisel (minimum 5/8 inch)
3. Circle Cutter
4. Gypboard T-Square
5. Hammer (12 to 16 ounce)
6. Hacksaw and Blades
7. Hand Level (48 inch)
8. Lath Hatchet
9. Lather's Snips
10. Metal Snips
11. Nail Bag
12. Nail Driver (Magnetic)
13. Power Tape (16 to 25 feet)
14. Tool Pouch (leather-12 pocket)
15. Utility Knife
16. Utility Saw
17. Wallboard Lifter
18. Wallboard Saw
19. Wallboard Stripper
20. Wire Snippers
21. Safety Goggle and Ear Plugs
22. Hard Hat
23. OSHA-approved Footwear

EXHIBIT "H"
## NOTICE OF QUITS, LAYOFFS, AND/OR TERMINATIONS

TO:   United Brotherhood of Carpenters
      & Joiners of America, Local 745 (AFL-CIO)
      1311 Houghtailing Street
      Honolulu, Hawaii  96817

Our collective bargaining Agreement with you requires that we notify you on a weekly basis of the names of employees covered by this Agreement who have quit, been laid off, or been terminated during the previous work week. In accordance with that provision, this is to officially notify you of the following:

1. _____        _____
              Name of Employee                                    Social Security Number

[  ]  Laid Off Due to Lack of Work
[  ]  Voluntary Quit
[  ]  Discharge for Cause

      Effective Date of Above: _____

We     [  ] would      [  ] would NOT      rehire this employee.

2. _____        _____
              Name of Employee                                    Social Security Number

[  ]  Laid Off Due to Lack of Work
[  ]  Voluntary Quit
[  ]  Discharge for Cause

      Effective Date of Above: _____

We     [  ] would      [  ] would NOT      rehire this employee.


                                        _____
                                                        Contractor

                                  By: _____
                                        Signature of Authorized Representative

                                        _____
                                        PRINT: Name of Above Representative

                                        _____
                                                        Telephone

29

ADDENDUM I
## AGREEMENT COVERING DRUGS AND OTHER CONTROLLED SUBSTANCES ON CONSTRUCTION JOB SITES IN THE STATE OF HAWAII

### W I T N E S S E T H

WHEREAS, the Union and the Company recognize that drug abuse is a problem that affects many employees, and wish to address this problem;

WHEREAS, especially in the construction industry, an employee who is under the influence of illegal drugs while at the workplace or is abusing controlled substances while at the workplace is in danger not only to himself or herself but to his or her fellow employees;

WHEREAS, the Union and the Company wish to make the workplace a better and safer place of employment by eliminating the danger that such employees create by being under the influence of drugs at the workplace;

WHEREAS, such employees who are under the influence of drugs have lower productivity than employees who are drug free;

WHEREAS, the Union and the Company wish to have employees working at normal capacity, doing an honest day's work for an honest day's pay;

WHEREAS, the Union and the Company do not wish to unnecessarily subject honest, drug free employees to drug testing; and

WHEREAS, the Union and the Company wish to comply with the Federal Law known as the "Drug-Free Workplace Act of 1988", Public Law 100-690 in order to obtain Federal work for the Company and the Company's employees who are represented by the Union;

A. **Prohibition Against Controlled Substances At the Workplace**

1. Every employee who is employed by the Company and who is covered by the Master Agreement is prohibited from unlawfully manufacturing, distributing, dispensing, possessing, using or being under the influence of a controlled substance at the Company's workplace. Any employee who violates this prohibition shall be subject to immediate removal from the aforesaid workplace, as well as other disciplinary action, including discharge.

B. **Use of Over-The-Counter Medication Or Medications Prescribed By a Licensed Physician**

1. Use of over-the-counter medications or of a medication prescribed by a licensed physician in accordance with the physician's order, is NOT prohibited; but to avoid an unwarranted accusation and/or other misunderstanding, the employee is required to report the fact that he is taking such medication to this Foreman and/or Supervisor, prior to commencing work at the workplace.

2. Any employee who is lawfully using a controlled substance at the workplace, i.e., taking prescription drugs in accordance with a doctor's order, while not subject to disciplinary action, may nevertheless be required to leave the workplace if consumption of that medication presents a safety hazard or prevents him from being able to properly perform his work.

C. **Education and Awareness Program**

To complement and foster our Joint Company and Union Policy and Program of achieving a drug-free workforce and an alcohol-free work place, the Company shall establish and implement a Drug Education And Awareness Program which shall include the following:

1. Dissemination of information to employees at least twice a year regarding the dangers of drugs in the workplace, the Company policy of maintaining a drug-free workplace; the penalties that may be imposed for drug or alcohol abuse violations; and any available substance counseling programs and services, substance abuse rehabilitation programs, employee assistance programs, and other community services that are available to those who have a drug or alcohol problem.

In connection with the above, employees will be encouraged to seek counseling and other assistance from these agencies on a self-referral basis if they feel they have a need for it. An employee who voluntarily seeks help and undergoes treatment for drug or alcohol abuse prior to being required to undergo testing will NOT be subject to disciplinary action because of admitted substance abuse, provided he or she thereafter remains drug and alcohol free after commencing treatment. Failure to remain drug or alcohol free shall be considered as that employee's First Offense and subject the employee to the actions set forth under paragraph G.1.(a), below.

2. Top Management and Supervisory employees will also be trained to assist in identifying and addressing the matter of unlawful use of alcohol or of a controlled substance by employees, including the making of referrals to appropriate agencies.

D. **Pre-Employment Testing**

1. Effective thirty (30) days after ratification of the Master Agreement, all current employees on the Contractors' payroll will not be required to undergo a pre-employment substance abuse test. However, an employee/applicant who has been laid off for thirty (30) calendar days or more or a new employee will be required to undergo a pre-employment substance abuse test as a condition of consideration of employment with the Company facility or work area.

2. Pre-employment testing must be in place and such testing must actually be conducted before the Company can conduct Periodic and Random Testing.

E. **Additional Considerations Applicable To Companies Regulated By the U.S. Department of Transportation**

In the event the Company is required to comply with U.S. Department of Transportation regulations regarding workplace drug testing programs the Company and the Union agree to comply with those regulations.

It is understood and agreed and compliance with the U.S. Department of Transportation regulations shall include:

1. Pre-employment and post-accident testing of applicants and employees subject to U.S. Department of Transportation regulation;

2. Appointment of a Medical Review Officer who will be responsible for making the final decision to verify a positive test result after review of all relevant data on the testing and any explanations offered by the individual tested;

3. Prohibiting employees who are subject to U.S. Department of Transportation regulation and who have tested positive from returning to work unless they are released to return to work by the Medical Review Officer;

4. Requiring employees who are subject to U.S. Department of Transportation regulation and who have tested positive to undergo increased, unannounced testing for up to 60 months; and

5. Retention of all positive test results for 5 years and retention of all negative results for 12 months.

F. **Immediate Removal From Job/Drug Testing**

1. The Company shall have the authority to immediately remove any employee from the workplace and to require that employee to immediately undergo, at Company expense, drug or alcohol testing in the manner set forth below, under the following circumstances:

   (a) **For Cause.** When a reasonable, objective basis exists to believe that an employee has engaged in the unlawful use of or is under the influence of a controlled substance at the workplace as evidenced by such factors as, but not limited to, the following:

      (1) Unsafe work habits or practices that endanger the employee himself/herself and/or other employees;

      (2) Abnormal work performance;

      (3) Physical conditions and/or symptoms, such as unstable balance, alcohol on breath, glassy or reddened eyes;

      (4) Frequent or unexplained absence from the workplace or job site during the employee's shift;

      (5) Abnormal personal behavior and/or poor interpersonal relations on the job;

      (6) Discovery of controlled substances, alcohol, or controlled substances paraphernalia at the work area or on the job site, in the possession of or immediate proximity of an employee; and/or

      (7) Objective evidence of unlawful use of a controlled substance or unlawful sale of a controlled substance as provided by any Federal, State or local enforcement agency;

   In utilizing the foregoing criteria of a "reasonable, objective basis," the parties hereto expressly agree that the Federal or State Constitutional law standards of "probable cause" or "reasonable suspicion" are not applicable.

   The Contractor shall complete the attached form (Appendix B) prior to sending an employee to be tested For Cause.

   (b) **Periodic Testing.** Periodic, routine or intermittent testing shall be conducted at different times and at different intervals for all employees on the project to determine the use of any illegal or unauthorized drug, alcohol or other substances prohibited by this policy.

   Post-counseling/rehabilitation or return-to-work medical examinations may be required when an employee returns to work after a long illness, disabling injury, extended absence, reduction in force or as a result of a condition of reinstatement upon completion of a drug and alcohol treatment or counseling program.

   As part of an annual physical the Company may require testing for those employees who are required to undergo medical examinations due to regulatory requirements of Local, State or Federal agencies (DOT, ICC, DOD, etc.)

   (c) **Random Testing.** Random Testing may be used at any time.

   Workplace testing may be altered or changed whenever the employees' activities are regulated by either the Department of Transportation, Department of Defense or by contract with any other branch of government or private industry.

   Random testing selection will be done on a fair and impartial basis as mutually agreed upon by the parties.

2. Urine samples will be taken only under the direction of a licensed physician designated by a Company-designated medical laboratory and the "Procedures For Medical Tests Of Urine Samples" as set forth in Appendix "A" as attached hereto shall be followed.

3. In addition, physicians and health care professionals who provide testing services for controlled substance and alcohol impairment shall adhere to the Code of Ethical Conduct For Physicians Providing Occupational Medical Services as adopted by the American Occupational Medical Association on July 23, 1976, as well as to the "Drug Screening In The Workplace Ethical Guidelines" as adopted by that same organization on July 25, 1986.

4. Refusal to sign an authorization to submit to a drug, controlled substance, or alcohol test, the refusal to undergo such a test, or the refusal to permit the physician or medical laboratory to provide the test results to the Company and Union shall constitute an act of insubordination. This aforesaid insubordination shall be just and proper cause for discipline, including discharge. The penalty for this aforesaid insubordination shall be: (a) a two week suspension from work without pay and without

fringe benefits accruing, for the first act of this aforesaid insubordination; (b) a four (4) week suspension from work without pay and without fringe benefits accruing for the second act of this aforesaid insubordination; and (c) discharge from employment for the third act of this aforesaid insubordination.

5. An employee shall complete the "Consent For The Release Of Confidential Information" form as set forth in Appendix "C" prior to undergoing a substance abuse test. When an employee is tested, the employee, the Company and the Union shall be notified of the test results. Action against the employee shall be taken in accord with the disciplinary section herein if the employee's drug or alcohol test results are positive, as defined in Appendix "A" hereto.

6. The medical laboratory shall retain all positive specimens, in a frozen state, for twelve (12) months; all negative specimens for two (2) weeks. An employee shall have the right to have his or her sample as originally collected independently retested at his/her expense by a NIDA-certified laboratory. The employee must exercise this right within fourteen (14) days from the time of the original sample collection and the employee must select a laboratory among those listed in Appendix "D" to conduct such retesting. If the independent drug or alcohol retest results are not positive under the criteria set forth in Appendix "A": (a) the employee shall be put back to work immediately with reimbursement of full back pay and benefits and with a rescission of any discipline imposed by reason of a positive drug test result, along with an explanation for such rescission, and (b) the Company shall also reimburse the employee for the cost of the retest as paid for by the employee.

Where the employee believes that the positive test result is not due to unlawful use of alcohol or a controlled substance, but due to exposure to a workplace substance, or that the accuracy of the test result was confounded by a workplace substance, he/she shall have the right, at the Company's expense to have an independent laboratory designated by the Company to evaluate the specimen by mass spectrometry or other state-of-the-art technology. If the evaluation indicates that the positive test result was due to a workplace substance, or that a workplace substance confounded the accuracy of the test; (a) the employee will be put back to work immediately with full back pay and benefits, and with a rescission of any discipline imposed along with an explanation for such rescission; and (b) the Company shall take immediate steps to insure that employees are not exposed to such substances at levels that may produce or cause such positive test results, or that may cause material impairment of health or functional capacity.

7. An employee who tests positive and is later allowed to return to work pursuant to paragraphs G.1.(a) or (b), below shall be subject to unannounced testing by the Company until two (2) subsequent consecutive tests of this nature are negative. Such tests shall be conducted within twelve (12) months after the employee returns to work, and in any event shall cease after the expiration of the aforesaid time period.

G. **Schedule of Disciplinary Actions**

The manufacture, distribution, dispensation, possession, use of, or being under the influence of alcohol or a controlled substance by an employee, the manufacture, distribution, dispensation, possession or use of the paraphernalia of a controlled substance by an employee, or the attempt to engage in any of the foregoing by an employee, is prohibited at the Company's workplace. The violation of this aforesaid prohibition by an employee shall constitute just and proper cause for discipline, including but not limited to discharge, as defined in the Master Agreement, and as specified in this Amendment to the Master Agreement. In the event the employee engages in a separate act of misconduct, in addition to the violation of this Policy, (such as insubordination, fighting, etc.), or engages in conduct which results in physical injury or property damage, the employee may also be disciplined for such conduct or misconduct in addition to discipline for the drug or alcohol offense. Such discipline shall be in accord with principles of just and proper cause.

1. The following disciplinary actions shall be taken against an employee whose drug or alcohol test has a positive reading, as defined in Appendix "A" hereto, or who is guilty of using or being under the influence of a controlled substance or alcohol at the workplace, and hereinafter collectively referred to as an offense:

(a) **First Offense**

(1) **Employee Option 1** - The employee shall be afforded the opportunity to enroll in a substance abuse assistance or rehabilitation program. If the employee enters such a program, his or her status as an employee will not be affected and he/she will be allowed to return to work and to continue to work as long as he/she remains drug free as indicated by a negative drug test result.

(2) **Employee Option 2** - A first-offense employee who does not choose to enroll in a substance abuse assistance or rehabilitation program shall be suspended for the length of time it takes to obtain a negative reading from any subsequent drug or alcohol test but in any case, no less than a two (2) week suspension. The employee must make arrangements with his or her Company prior to undergoing drug or alcohol retesting. Should subsequent drug or alcohol test fail to produce a negative reading within three (3) months after the first offense, then the employee shall be considered as having committed his or her second offense.

(b) **Second Offense** - A suspension from work for the time it takes to obtain a negative reading from any subsequent drug or alcohol test but in

any case, no less than four (4) week suspension from work. The employee must make arrangements with his or her Company prior to undergoing drug or alcohol retesting. Should a subsequent test fail to produce a negative reading within two (2) months after the beginning of such suspension, then the employee will be discharged and will not be eligible for re-employment by the Company until such time as the physician or medical laboratory that conducted the original test submits verification of a negative reading having been obtained from said person.

   (c) **Third Offense** - Any employee who tests positive for the third time will be discharged and will not be eligible for re-employment by the Company for a period of three years, unless the employee can establish through objective evidence that he or she is no longer a current alcohol or drug abuser whose current use of alcohol or drugs prevents such individual from doing his or her job, or would constitute a threat to property or the safety of others.

  2. For purposes of administering this paragraph G (Schedule Of Disciplinary Actions), offenses shall be cumulative on a Company-wide basis. For example: An employee commits an offense while employed on Job A. Said employee is subsequently employed on Job B where he/she commits another offense. That offense shall be considered and his/her second offense.

### H. Selling of Controlled Substances

  1. An employee who sells or attempts to sell a controlled substance and/or the paraphernalia of a controlled substance at the Company's workplace shall be immediately discharged from employment. In addition, any employee who engages in such conduct and is discharged for the same shall not be eligible for re-employment by the Company.

  2. Any such incidents shall also be reported to appropriate enforcement agencies.

### I. Additional Considerations Applicable To Work On Federal Construction Projects

The following additional provisions shall apply only to employees who are employed by the Company on a work project that constitutes a procurement by the Federal Government or a Federal Agency of any property or services of a value of Twenty-Five Thousand Dollars ($25,000) or more.

  1. As a condition of employment, any employee convicted of a violation of a criminal drug statute for a violation occurring in the workplace must, as required by the Federal Drug-Free Workplace Act, notify the Company within five (5) days of that conviction. Failure to do so will subject the employee to disciplinary action, including discharge.

  2. As required by the Federal Drug-Free Workplace Act, any employee who is convicted of a violation of a criminal drug statute occurring in the workplace shall be disciplined by the Company or shall

be required by the Company to participate in an approved drug abuse assistance or rehabilitation program.

  3. As required by the Federal Drug-Free Workplace Act, the Company must and will notify any Federal Contracting Agency on whose projects it is working of a workplace drug conviction within ten (10) days after receiving notice from the convicted employee or other official source of such conviction.

  4. In compliance with the U.S. Department of Defense Drug-Free Workplace Clause (September 1988), any employee who has been granted access to secret or classified information — or whose position and work involves national security, health, or safety and/or a high degree of trust and confidence — will, at the Company expense, be subject to testing for the unlawful use of controlled substances and alcohol.

  5. The Company shall not engage in the unlawful manufacture, distribution, dispensation, possession, or use of a controlled substance in the performance of any work or contract.

### J. Controlled Substance

For purposes of this Amendment to the Master Agreement, a "controlled substance" is defined as: any drug listed in Schedules I through V of the Controlled Substances Act, at Section 202 thereof, 21. U.S.C., Section 812. These controlled substances include, but are not limited to, marijuana, cocaine, opiates, amphetamines and phencyclidine.

### K. Application of Grievance Procedure And Arbitration Provisions

Grievances of employees covered by the Master Agreement involving the application of the terms and conditions of employment set forth herein shall be subject to the Grievance Procedure And Arbitration Provisions as set forth in the Master Agreement, with the results thereof being final and binding.

### L. Inclusion of Substance Abuse Treatment Benefits Under the Health & Welfare Plan

If not already included, the parties hereto will recommend to the Trustees that substance abuse treatment benefits be included under the jointly administered Health & Welfare Plan, created under Section 302 of the Taft-Hartley Act.

### M. Apprenticeship Requirements

The parties hereto will also recommend that the passage of a drug test for unlawful use of controlled substances be part of the eligibility requirements for entry into and indenture under the Apprenticeship Program maintained by the Company and the Union pursuant to a Trust Fund created under Section 302 Of the Taft-Hartley Act.

### N. Disclosure Of Information

  1. The Company and the Union shall be required to disclose to one another any and all information in their possession that is necessary to enforce this Addendum to the Labor Agreement. The foregoing duty to disclose information is included herein

in order for the Company and the Union to comply with their respective duties to bargain in good faith under Sections 8(a)(5) and 8(b)(3) respectively of the National Labor Relations Act, as amended.

2. The records maintained by the Company for its employee assistance program are confidential and protected by federal law and regulations. The Company cannot disclose information identifying an employee as a participant in its program except in the following limited circumstances:

   (a) The employee-participants consent to the disclosure in writing as set forth in Appendix "E" attached hereto and made a part hereof;

   (b) The disclosure is required by a court order;

   (c) The information is necessary to meet a medical emergency involving the employee-participant; or

   (d) The information is required by qualified personnel for research, audit or program evaluation.

3. The Company will provide each employee who participates in the employee assistance program with a written summary, as requested, of the federal law and regulations governing disclosure as set forth in Appendix "F" attached hereto and made a part hereof.

4. An employee's participation in the employee assistance program will not prohibit the Company and/or employee assistance program provider from reporting any crimes committed by the employee-participant either at the program or against any person who works for the program or from reporting any threats to commit such crimes, to the appropriate federal, state or local authorities.

5. An employee's participation in the employee assistance program will not prohibit the Company and/or employee assistance plan provider from reporting any information about suspected child abuse, or neglect under state law to the appropriate state or local authorities.

O. **Additional Definitions**

As utilized herein, the following terms have the following meanings:

1. The term "conviction" means the finding of guilt (including a plea of nolo contendere or no contest) or imposition of sentence, or both, by any judicial body charged with the responsibility to determine violations of Federal or State criminal drug statutes;

2. The term "criminal drug statute" means a criminal statute involving manufacture, distribution, dispensation, use, or possession of any controlled substance;

3. The term "Federal Agency" means an agency as that term is defined in Section 552(f) of Title 5, United States Code;

4. The terms "unlawful use of a controlled substance," "illegal use of a controlled substance," or "illegal use of drugs" means the use, consumption or inges-

tion of any controlled substance under any circumstances except when directed by a physician or dentist;

5. The term "workplace" means any site for the performance of the work of the Company or any location where the employee may be during paid Company time or when the employee is under the care, control, and custody of the Company; and

6. The terms "drug" or "drugs" mean a controlled substance as defined herein.

P. **Entire Agreement**

This document contains the entire agreement and no other substance abuse testing shall be allowed unless by mutual written agreement between the parties.

APPENDIX A
## PROCEDURES FOR MEDICAL TESTS OF URINE SAMPLES

Subject to the restrictions on medical tests contained in the foregoing Amendment to the Master Agreement, urine samples shall be handled in the following manner:

A. Collection shall be by a physician or health care professional. The presence of a Union representative is not necessary when the collection of urine is made. Specimen containers shall be labeled with a number and if the donor chooses, the donor's signature, and shall be closed with a tamper-proof seal initialed by the donor and collecting agent. The labeling shall be done in the employee's presence and in the presence of a Union representative if the employee chooses.

B. The specimen number and identifying information on the donor shall be entered on a log and signed by the collecting technician in the presence of the employee — and in the presence of a Union representative if the employee chooses — and the employee shall initial the proper line on the log entry.

C. The volume of each sample shall be such that sufficient amounts of urine will exist for both initial tests, confirmation tests and independent testing.

D. Samples shall be stored in a scientifically acceptable manner.

E. All handler and couriers of the sample must complete entries and identify themselves on a proper chain of custody form.

F. Confirmation tests in accordance with the Guidelines as established by the National Institute On Drug Abuse (NIDA) must be performed. After testing and confirmation testing, the facility must retain a sufficient portion of the sample for independent retesting and store that portion in a scientifically acceptable, preserved manner for the period of time as set forth in the guidelines as issued from time to time by the National Institute On Drug Abuse (NIDA) — unless the donor/employee or the Union requests of the facility that it retain the sample for a longer period of time.

G. Results of the testing shall be communicated in writing to the Company, Union and the donor/employee within seventy-two (72) hours after the results are determined. The laboratory may only report a positive drug or alcohol test result if the appropriate test indicates that the specimen contains levels of drugs in excess of the following levels:

   1. Blood alcohol level in excess of the State of Hawaii Standard giving rise to a legal presumption of intoxication.

   2. Drug levels in excess of those levels as set forth in the Guidelines as established by the National Institute On Drug Abuse (NIDA).

H. Information on test results and the fact that testing was done shall be kept confidential by the Company, Union, and tester, and shall be communicated only to those who must know the information in order to ensure safety at the workplace and enforce the terms and conditions set forth in the foregoing Amendment to the Master Agreement. Copies of all documents — including but not limited to test results, computer printouts, graphs, interpretations, and chain of custody forms — shall be delivered to the employee from whom the samples of the bodily fluids were taken.

I. On the day that the sample is taken when tested For Cause, the Contractor shall send the employee home for the remainder of the day, and shall arrange transportation home for that employee and not allow the employee to drive home. The employee shall not be allowed to return to work until his or her test results are known.

J. As utilized herein, the terms "drug" or "drugs" mean a controlled substance as defined in the foregoing Amendment to the Master Agreement. As utilized herein, the term "alcohol" has the same meaning that is set forth in the foregoing Addendum to the Master Agreement.

APPENDIX B
SUBSTANCE ABUSE TESTING

TYPE: _____

LOCATION CODE: _____

SUBSTANCE ABUSE TESTING

TO: _____    DATE: _____

POSITION: _____    DEPT/PROJECT: _____

1. As an employee, you are ordered to be tested for substance abuse in accordance with Company policy and procedures, based on reasonable suspicion.

2. An appointment has been made for you to be tested at:

   _____

   _____

   _____

   Date: _____

   Time: _____

3. You will be escorted to the collection site by a Company official or representative. You will be provided transportation to the collection site and provided transportation to your residence upon completion of the specimen collection. Any costs accrued for transportation will be paid by the Company.

4. You will be required to sign a form voluntarily consenting to submit to testing, to provide specimen(s) as part of testing and to release the test results to the Company and its Medical Review Officer. Failure to sign this form shall result in disciplinary action as set forth in the program and procedures for disciplinary action.

5. You are hereby placed on indefinite suspension without pay pending the results of the substance abuse test. If the results are negative, you will be returned to work immediately and reimbursed for all lost time, and no record of the testing or indefinite suspension will be placed in your personnel file.

All substance abuse testing required by the Company will be in accordance with any applicable local, federal and state laws or regulations.

Unless you are advised otherwise in writing by the Company, substance abuse testing for cause shall be for the presence of alcohol in the system or for the following substances of abuse: marijuana, cocaine, amphetamines, opiates and phencyclidine.

You are advised that over-the-counter medications or prescribed drugs may result in a positive test result. For this reason, the Company's Medical Review Officer may need my assistance in identifying which medications or drugs I may be taking at the present time and may have taken within the past thirty (30) days to ensure accuracy of testing results.

I would like to voluntarily disclose that I am currently taking the medication listed below:

**\*Please take a picture ID with you for identification at the time of testing.**

If you have any questions, please contact the undersigned. Failure to undergo substance abuse testing as required by the Company may result in disciplinary action.

_____

Director of Environmental Safety and Health,
Personnel Manager, or designee

cc: Medical Review Officer

APPENDIX C

## CONSENT FOR THE RELEASE OF CONFIDENTIAL INFORMATION

I, _____ , authorize _____ to
　　　　　(Name of patient)　　　　　　　　　　　　　　　　　　(Name of Testing Facility)

disclose to _____ information
　　　　　　　　(Name of Employer and Name of Union)

regarding the result of any substance abuse test taken by me under the Agreement covering Drugs and Other Controlled Substances on Construction Job sites in the State of Hawaii (the "Agreement"). The purpose of the disclosure authorized herein is to determine whether I have complied with the provision of the Agreement.

I understand that my records are protected under the federal regulations governing Confidentiality of Alcohol and Drug Abuse Patient Records, 42 CFR Part 2, and cannot be disclosed without my written consent unless otherwise provided for in the regulations. I also understand that I may revoke this consent at any time except to the extent (that action has been taken in reliance on it, and that in any event) this consent expires automatically upon my termination from employment with the above-referenced employer.

_____  _____
Signature of patient　　　　　　　　　　　 . Date

37

APPENDIX D
COLLECTION STATIONS FOR DRUG TESTING

| Location | Contact Person |
|---|---|
| Straub Clinic and Hospital<br>888 S. King Street<br>Honolulu, Hawaii 96813 | Linda Spadarro<br>Corporate Account Executive<br>Ph. 522-4049 |
| Straub Occupational Health Services<br>848 S. Beretania Street<br>Honolulu, Hawaii 96814 | Barbara Lewis<br>Dr. Brian Mihara (MRO)<br>Ph. 522-4552 |
| Straub Clinic - Westridge<br>150 Kaonohi Street<br>Aiea, Hawaii 96701 | Doris Noguchi<br>Dr. Debra Agles<br>Sandy (to schedule)<br>Ph. 488-8431 |
| Kaneohe Family Health Center<br>Windward Mall (2nd Level)<br>46-046 Kamehameha Highway<br>Kaneohe, Hawaii 96744 | Ann Topolinshi<br>Annette DaSilva<br>Ph. 235-0099 |
| Clinical Labs of Hawaii<br>33 Lanihuli Street<br>Hilo, Hawaii 96720 | Adrian Mangiboyat<br>Ph. 961-4708<br>Fax 935-2518<br>HILO |
| Kona Hospital Laboratory<br>P.O. Box 69<br>Kealakekua, Hawaii 96750<br>(Basement Level) | Arlene Rosehill (after hours)<br>Nina Garcia<br>Ph. 322-9366<br>KONA |
| Maui Memorial Hospital<br>221 Mahalani Street<br>Wailuku, Hawaii 96793 | Wade Hiraga (after hours)<br>Ph. 242-2064<br>MAUI |
| Clinical Labs of Hawaii<br>1831 Wilipa Loop<br>Wailuku, Hawaii 96793 | Alison Horie<br>Ph. 244-5567<br>MAUI |
| Wilcox Memorial Hospital<br>Laboratory<br>3420 Kuhio Highway<br>Lihue, Hawaii 96766 | Rolinda Deyro<br>Ph. 245-1088<br>Carlene Oshiro<br>Ph. 245-1087<br>KAUAI |

APPENDIX E
### WRITTEN CONSENT FOR DISCLOSURE OF INFORMATION
### CONTAINED IN THE COMPANY'S RECORDS CONCERNING PARTICIPATION
### IN EMPLOYEE ASSISTANCE PROGRAM FOR ALCOHOL OR DRUG ABUSE

I, _____ request/authorize
(Name of employee-patient)

_____ to disclose to _____
(Name of Company)                                  (Name of party to receive information)

the following information: _____

_____

for the limited purpose of _____

I understand that this consent is subject to revocation at any time to the extent that the employer has already disclosed such information in reliance upon this consent form. If not previously revoked, this consent will terminate upon _____

_____
(Specific date, event or condition)

_____
Signature of Employee

_____
Date signed

Original to employee's file.

APPENDIX F
MEMORANDUM


TO: _____

FROM: _____
(Name of Company)

DATE: _____

RE: CONFIDENTIALITY OF ALCOHOL AND DRUG ABUSE PATIENT RECORDS.

The records maintained by _____
(Name of Company)

("the Company") in relation to its employee assistance program for alcohol or drug abuse are protected by federal law and regulations.

The Company cannot disclose information identifying you as a patient or participant in such program except in the following limited circumstances:

1. You (the participant) have consented in writing;

2. The disclosure is required by a court order;

3. The information is necessary to meet a medical emergency involving you;

4. The information is required by qualified personnel or research, audit or program evaluation.

Violation of the federal law and regulations by a program is a crime. Suspected violations may be reported to appropriate authorities in accordance with federal regulations.

Federal law and regulations do not protect any information about a crime committed by a patient either at the program or against any person who works for the program or about any threat to commit such a crime.

Federal laws and regulations do not protect any information about suspected child abuse or neglect from being reported under state law to appropriate state or local authorities.


Copy to employee's file.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

**HAWAII CARPENTERS TRUST FUNDS,** )
(*Health & Welfare Fund* by its trustees  )
Albert Hamamoto, Audrey Hidano, Henry )
Iida, Glen Kaneshige, Thomas Toma,  )
Daniel Tom, Elmer Cabico, Paul C.K.  )
Chang, Ronald Taketa, Melvin Fujii,  )
Clifford Resacio, Russsell Young and  )
Keith Hirota; *Apprenticeship & Training*  )
*Fund* by its trustees James Ramirez,  )
Russell Ogata, Conrad Murashige,  )
Robert Donle, Angela Chinen, Dante  )
Agra, Ron Taketa, Sidney Shimokawa,  )
Dean Takahashi and Russell Hiranaka;  )
*Vacation & Holiday Fund* by its trustees  )
James Watanabe, James Ramirez,  )
Gerard Sakamoto, Paul Sasaki, Jiggs  )
Tamashiro, Mark Erwin, Michael Spain,  )
Jr., Rockwell Rogers, Jr., Curtis Kern,  )
Patrick Borge, Sr. and Lloyd Kupau, Jr.;  )
*Market Recovery Program* by its trustees )
Edmund Aczon, Thalia Choy, Steven  )
Hidano, Claude Matsumoto, Gerard  )
Sakamoto, Raymond Mitchell, Albert  )
Belliveau, Michael Spain, Jr., Ronald  )
Taketa, Glenn Young and Jason Orita;  )
*Financial Security Fund* by its trustees  )
Kenneth Sakurai, Gordon L. Scruton,  )
James Watanabe, Conrad Murashige,  )
Lance Wilhelm, Brian Hedge, Rockwell  )
Rogers, Jr., Bruce Soileau, Ronald  )
Taketa, Tim McCormack, Kenneth  )
Spence, Jack Reeves and Ralph  )
Yackley),  )
                                                             )
                          Plaintiffs,  )
                                                             )
          vs.                                             )
                                                             )
**DYNAMIC INTERIORS, INC.**, a Hawaii  )
corporation,                                        )
                                                             )
                          Defendant.  )
_____ )

CIVIL NO. _____

SUMMONS

19348_1.WPD

<u>SUMMONS</u>

TO:    DYNAMIC INTERIORS, INC.
904 Kohou Street, Room 103
Honolulu, Hawaii 96817

Defendant

To the above-named Defendant:

YOU ARE HEREBY SUMMONED and required to serve upon

McCorriston Miller Mukai MacKinnon LLP, plaintiffs' attorneys, whose address is Five

Waterfront Plaza, 4th Floor, 500 Ala Moana Boulevard, Honolulu, Hawaii 96813, an

answer to the Complaint which is herewith served upon you, within twenty (20) days

after service of this summons upon you, exclusive of the day of service.  If you fail to do

so, judgment by default will be taken against you for the relief demanded in the

complaint.

This summons shall not be personally delivered between 10:00 p.m. and

6:00 a.m., on premises not open to the general public, unless a judge of the above-

entitled court permits, in writing on this summons, personal delivery during those hours.

A failure to obey this summons may result in an entry of default and

default judgment against the disobeying person or party.

DATED:  Honolulu, Hawaii, ___JUL 1 0 2002_____

CLERK OF THE ABOVE-ENTITLED COURT

SEAL